[No. 432.   Decided September 17, 1892.]

JOHN BELL, *Appellant*, v. BELLE WAUDBY *et. al.*, *Re-spondents.*

PROMISSORY   NOTES—EXECUTION—AMENDED   COMPLAINT—WAIVER   OF
ERROR—RELIEF—CANNOT BE ENLARGED BY REPLY.

In an action upon promissory notes given in payment of an ante-cedent debt, to which the payor's name was signed by his wife, the payor's execution thereof is sufficiently established where it is shown that he and his wife had together carefully considered and gone over the items of indebtedness for which the notes were given, and that he had signed a mortgage securing said notes, and in which they were substantially described.

Where an amended complaint is filed, any error of the court in ruling upon the original complaint is thereby waived.

A claim for relief, as set forth in the complaint, cannot be in any manner enlarged in the reply to defendant's answer.

*Appeal from Superior Court, Whitman County.*

*F. M. Ellsworth, Norman Buck,* and *Matthew B. Kelly,* for appellant.

*F. H. Brown,* and *Chadwick & Fullerton,* for respondent Belle Waudby.

The opinion of the court was delivered by

HOYT, J.—The material question presented by the record in this cause is as to whether or not the notes set

out in the complaint, and the chattel mortgage to secure the same, were in the lifetime of William F. Waudby legally executed by him. A large mass of testimony was introduced by the respective parties, bearing more or less directly upon this issue, and the court below decided against the legality of such execution. We have given such testimony a most careful examination, and are reluctantly forced to the opinion that the finding of such court in that regard was wrong. It is impossible, within the proper limits of this opinion, to attempt to quote the testimony, *pro* and *con*, introduced by the respective parties upon this question, and therefrom deduce our reasons for coming to the conclusion that said notes and mortgage were properly executed by said deceased, and were and are proper claims against his estate. It must suffice for us to say that the proof satisfies us that upon the day when these instruments purported to have been executed, and the day preceding such purported execution, there was such a talking over and adjustment of the indebtedness of the said Waudby to John Bell, to whom said notes and mortgages were made, that we are satisfied that the whole matter of such indebtedness must have been fully and entirely understood, both by said William F. Waudby and Belle Waudby, his wife. In view of the full discussion had in relation to such indebtedness on the two days above referred to, and of the further fact, which abundantly appears in the record, that said Belle Waudby was a woman of more than ordinary intelligence, and was as fully informed of all the business transactions of her husband as he was himself, it is not reasonable to suppose that she should have believed that their indebtedness to said Bell was over $1,700, when in fact, as now claimed by her, it was only about $700. That said Belle Waudby was in the full possession of her faculties at the time of such settlement, and most carefully considered the items of indebtedness presented by said Bell,

which made up the amount for which said notes and mort-gage were given, is abundantly shown by the record. We think, therefore, that as a basis for the investigation of the acts of said William F. Waudby and his wife at the time of the alleged execution of the instruments in question, it must be assumed that the whole of the indebtedness, to secure which said papers were executed, was due from said Waudby to said Bell. This being so, almost the entire argument of respondent as to the insufficient execution of the papers in question falls to the ground. The indebted-ness once being assumed to have existed, and the duty thus placed upon William F. Waudby to pay or secure the same, his execution of the notes for the purpose of so securing it will be upheld upon much less proof as to his capacity to so execute than they would if the only proof of considera-tion for such instruments was the recitals therein and the execution thereof.

The conclusions which we have above stated leave only two questions of fact in relation to such execution as to which a word, perhaps, ought to be said. The first is as to the actual state of mind of William F. Waudby at the time of such execution, for even although the indebt-edness as between him and the said Bell existed to the full amount named in said notes and mortgage, yet if he was ab-solutely incompetent to do any business, or to at all realize what was going on around him, his attempted execution, when in that condition, would be ineffectual, and the notes and mortgage, as such, would have no binding force. The testimony bearing upon his condition at this time is some-what conflicting, but, as we view it, that most favorable to the case of the respondent shows him to have been in such a condition that he knew all that was going on about him, and was fully able to understand ordinary business trans-actions. It is true such testimony shows him to have been in a very bad state so far as his physical condition was

concerned, and also shows that such physical condition had to a considerable extent affected his mind, but it also shows that his mind was not so much affected but that he and his wife could and did talk over all their business affairs, even to the extent of going into matters of detail in regard to the conduct of the farm. The testimony on the part of the appellant shows the same state of facts, excepting that from it it would be gathered that his strength of mind had been much less affected by his physical condition than appeared from the testimony on the part of the respondents. Taking all the testimony together, it seems clear to us that when these papers were executed, on the 7th day of April, 1889, and for some time thereafter, he not only was able to, but did, in fact, look after and direct all the business transactions which were brought to his attention by his wife.

The other question of fact is as to whether or not the placing of the name of William F. Waudby to the notes by his wife constituted a signature thereof by him. We think it did. The whole matter of the giving of such notes, and mortgage to secure the same, had been fully talked over in the presence of William F. Waudby the day before the notes were signed, and the detail of the whole transaction, so far as the giving of security, and the particular property upon which the security was to be given, had been fully settled and determined. We think it also sufficiently appears that at the very time this figuring up of the amount of the indebtedness was had as between Bell and Mrs. Waudby, and the notary who was there for the purpose of drawing and acknowledging the papers, Mr. Waudby had full knowledge of what they were doing, and while he may not have known just how the notes were to be signed, or the moment at which they were signed, we think that the circumstances were such as to warrant us in holding that she acted for

him with his consent and tacit direction.    But even if the
notes were not his when executed, his execution of the
mortgage, in which said notes were substantially described,
was a complete ratification of their execution, and neither
he nor those representing him can now be heard to allege
anything as against their proper execution.

The notes and mortgage having been properly executed
to secure a *bona fide* indebtedness, but two questions which
we need to consider are urged by the respondent as reasons
why appellant should not maintain his action: First, that
there was no sufficient allegation of presentation to and re-
jection by the executrix and the probate court; second, that
there was no showing that the indebtedness was that of the
community.    As to the first question the allegations are
not, perhaps, as full and complete as they might have been,
but we think they should be held to be sufficient, especially
as they were not attacked by motion or demurrer, and any
uncertainty in relation thereto was fully overcome by the
proofs introduced at the trial.    As to the second question,
we held, in the case of *Oregon Improvement Company v. Sag-
meister, ante,* p. 710, that debts of this kind are *prima facie*
those of the community.    This being so, the allegations and
proof must be held to be sufficient to show that this in-
debtedness could be properly enforced against the property
of the community.

The only other question for us to decide is as to the re-
lief which should be granted the plaintiff.    His counsel have
in their brief alleged errors growing out of the action of
the court in regard to the original complaint, and in regard
to its action in various technical matters, but by filing an
amended complaint he clearly waived the errors, if any, of
the court in ruling upon his original one.    This is, perhaps,
the general rule, even in cases at law, and certainly such is
the rule in suits in equity.

As to other alleged errors committed by the court they
are such as could have no effect upon this court in deter-

mining the rights of the parties in a cause in equity, for the reason that in such a cause this court hears and determines *de novo* the same as though it was an original trial court. All questions as to the relief to which plaintiff would be entitled under the allegations in his original complaint are, therefore, eliminated from the case. The amended complaint which he filed is simply one to establish the indebtedness secured by said notes and mortgage as a claim against the estate of the maker, and to foreclose the mortgage given to secure the same. In the reply to the respondent's answer there seems to have been an attempt to have enlarged the scope of the complaint, but this cannot be done. The office of a reply is to meet the allegations of the answer, and cannot in an ordinary case in any manner enlarge the claim for relief as shown in the complaint. As we view the pleadings, then, the plaintiff was not entitled thereunder to put in proofs tending to show him to be entitled to other than the relief which he had specially prayed for in his complaint. The prayer for general relief in the complaint might have availed him for such purpose if there had been any facts alleged in the complaint as a foundation therefor, but there were none.

The decree of the lower court must be reversed, and the cause remanded with instructions to enter a decree establishing the claim set out in plaintiff's complaint as a charge upon the estate of said William F. Waudby, and foreclosing the mortgage given to secure the same upon all property mentioned therein, excepting the cattle shown by the pleadings and proof to have been released therefrom. The plaintiff will recover his costs in both courts, including an attorney's fee of three hundred dollars, as a part of his costs in the court below.

ANDERS, C. J., and STILES and DUNBAR, JJ., concur.

SCOTT, J.—Entertaining a different opinion as to the facts proved from that expressed by a majority of the court, I dissent.