W. M. CROFT v. COLFAX ELECTRIC LIGHT & POWER COM-
PANY, Appellant, AND CITIZENS' STATE BANK OF COL-
FAX, IOWA, Appellee, Defendants, W. M. ROWLES AND
W. K. CAIN *et al.,* Intervenors and Appellants.

**Levy on Corporate Stock:** NOTICE OF LEVY. *Notice of Sale*   Under
Code, sections 3894,3974, providing that corporate stock may
be levied on under execution by notifying the president, etc.,
that the stock has been levied upon, a notice of such officer
is a part of the levy, and sufficient, though it is in the past
tense, and being served on all interested, also answers as the
statutory notice of sale.

SAME:   *When informal levy sufficient.*   Code, sections 3894, 3974,
requiring corporate stock to be levied on under execution by
notifying an officer of the corporation, etc., does not apply to
special execution in foreclosure of a pledge of stock in the pos-
session of the judgment creditor, but the sale passes title
as against a judgment debtor, who does not question the pro-
ceedings until after sale, though no formal levy was actually
made.

**Mandamus:**   WHEN PROPERLY TRANSFERRED TO EQUITY. Where, after
a mandamus suit is fully made up, it presents equitable issues
on the part of all contestants, it is properly transferred to the
equity docket.

TRANSFER:   *When harmless error.*   Transferring a mandamus suit
to the equity docket is without prejudice, if there is no dis-
puted question of fact for the jury to pass on.

*Estoppel to object to transfer.*   Where, in a mandamus to compel a
corporation to transfer certificates of stock purchased at exe-
cution sale against the owner, he intervenes and injects equit-
able matter by praying the delivery of the certificates to him,
for that the debt for which the execution was issued had been
paid, he cannot complain that the case is transferred to the
equity docket.

*Appeal from Jasper District Court.*—HON. D. RYAN, Judge.
FRIDAY, APRIL 12, 1901.

THIS action was originally for a mandamus.   Plaintiff
claims to have purchased certain shares of stock in the Col-

fax Electric Light & Power Company, previously held in pledge by the Citizens' State Bank of Colfax, at an execution sale had under a judgment in favor of said bank and against W. P. Cain and W. M. Rowles. The by-laws of the electric light and power company provide that "shares of stock must be transferred upon the books of the corporation by surrendering the certificates to the proper officers for cancellation, whereupon new certificates shall be issued to the person or party becoming a new stockholder." It was averred that the officers of said company refused to accept the surrender of the certificates held by plaintiff, or to issue him new certificates. A writ of mandamus was therefore prayed, to compel a transfer of said shares. The action was at first only against the Electric Light and Power company, but thereafter, at the instance of plaintiff, the Citizens' State Bank was brought in as a defendant. The Electric Light and Power company answered, alleging, in substance, that it was willing to make transfer of the shares as soon as it knew who legally owned the same; that it had received notice from W. K. Cain, representing the heirs of W. P. Cain, deceased, and from W. M. Rowles, claiming to be the owners thereof—the Cain estate, of certificates numbered 13, 14, 15, 16, 17, of 10 shares each, and No. 18, of 5 shares; and Rowles, of certificates numbered 21, 22, 23, 24, 25, 26, 27, 28, and 29, of 5 shares each. Rowles and the heirs of the Cain estate intervened separately in the action, claiming title to the certificates as above stated, and denying that the sheriff ever levied upon said shares, or that he had any authority to sell the same, or that he in law or fact ever delivered same to plaintiff. It is also alleged that the debt for which said stock was pledged is fully paid. The prayers of these petitions in intervention are important, in view of an objection made by appellants to the transfer of the cause to the equity calendar. They are practically identical, and in these terms: "Wherefore your petitioner prays that he be made a party defendant in this

proceeding, and that he may have judgment for the delivery
of said stock to him, and for all other proper relief." In the
amendment making theCitizens' State Bank a party defend-
ant, which was filed by plaintiff after the filing of the peti-
tions in intervention, it was prayed that, in case it was deter-
mined there was no valid levy upon or sale of said certificates'
then that the satisfaction of the judgment under which the
sale was made, to the amount of $3,472 be cancelled—that
being the sum bid by plaintiff at the execution sale—and that
a new special execution issue for the sale of said shares, and
that the bank be required to pay back to plaintiff such sum
of $3,472, with interest. The Citizens' State Bank answered,
denying the material allegations of the petitions in interven-
tion, and by way of cross petition set out the facts of the sale
to plaintiff, and prayed that in case the sale be held invalid
the satisfaction of its judgment to the extent of the amount
paid by plaintiff be set aside and a new execution be awarded.
There was a demurrer to this cross petition, which was over-
ruled.   The issues raised thereby will be stated in the opinion.
The trial court found that the sale of the shares on execution
to plaintiff was void, because such execution was never lev-
ied; that plaintiff was for this reason not the owner thereof.
It gave plaintiff judgment against the Citizens' State Bank
for $3,472, ordered the satisfaction of the original judgment
under which execution sale was made set aside to the extent
of $3,472, and awarded a new execution to the bank for the
sale of said shares.   Plaintiff and the interveners appeal.
We shall denominate the latter "appellants."—*Reversed.*

*C. C. Cole* for appellants.

*Cragan Bros.* and *Connor & Weaver* for plaintiff.

*Cragan Bros.* for defendant Citizens' State Bank.

WATERMAN, J.—By motion to strike plaintiff's amend-
ment making the bank a party defendant, and by the de-
murrer to the bank's cross petition, two questions are pre-

sented: (1) Was there error in permitting equitable issues
to be set up, and transferring the cause to the equity docket?
(2) Had the trial court jurisdiction to modify the judgment
in this action, or should such relief have been sought in the
case in which the judgment was rendered?

On the first proposition, we have to say that the first
equitable matter injected into the case was at the instance of
interveners, who prayed for a delivery of the certificates to
them on the ground that the indebtedness for which
they were pledged was fully paid. Only a court of
equity could decree a delivery of these certificates.
Having first transgressed the proper bounds of an action for
mandamus, they cannot be heard to complain that their ex-
ample was followed. After the case was fully made up, it
presented equitable issues on the part of all those making
contest, and therefore was properly transferred. It is not
material to consider whether the cancellation of the origi-
nal judgment could be rightly decreed in this proceeding;
for, as will later appear, we do not think that judgment
should have been interfered with. Furthermore, the trans-
fer and trial in equity would be without prejudice if there
was no disputed question of fact for a jury to pass upon.
*Machine Co. v. Markert,* 107 Iowa, 340. This was true
in the case at bar. The facts were undisputed. Law is-
sues only were finally submitted for decision.

II. This brings us to the issues involved in the merits
of the case, which in statement are quite simple. Was there
a valid levy of the execution under which these shares were
sold? If not, was a levy made in strict conformity to the
statutory requirements—a necessary prerequisite to a valid
sale by the sheriff? A consideration of the first question
necessarily involves a review of the facts as to what
the sheriff did. Upon receiving the writ of execution,
which, by the way, was directed against certain real
estate as well as these shares of stock, the sheriff noted the
fact of the levy on the stubs of the certificates in a book kept

by the Electric Light and Power company. This was done on March 1, 1897. On the same day a notice signed by the sheriff, and describing the shares of stock and real estate, was served by that officer on the secretary of said company. The material part of the notice is in these words: "You are hereby notified that by virtue of a special execution to me directed, * * * I have levied upon and executed, as property of W. M. Rowles *et al.,* the following described mortgaged or pledged stock or real estate." Here follows a description of stock and real estate. After the description comes the phrase "of which you are in actual occupancy." The time and place of sale are then given. This notice was directed to Rowles, Cain, the Citizens' State Bank, Colfax Electric Light & Power Company, and others. In these facts, if at all, is to be found the evidence of the levy. Section 3894 of the Code reads: "Corporation Stock. Stock or interest owned by the defendant in any company is attached by notifying the president or other head of the company, or the secretary, cashier, or other managing agent thereof, of the fact that the stock has been attached." And section 3974, in respect to executions, provides: "Stock or interest owned by the defendant in any company or corporation * * * may be levied upon in the manner provided for attaching the same." It is obvious from these provisions that the indorsements on the stubs of the certificates were wholly ineffective. The position taken by interveners is that the notice served was not a part of the levy, but was a mere notice of sale given to the debtors and occupant of the real estate, under sections 4023-4025, Code; that the levy was supposed to have been made by the officer noting the fact on the stubs of the certificates, and the notice assumes that fact because it recites the levy as having been made. But this view of the matter leaves out of consideration that the notice was addressed to and served upon the secretary of the Colfax Electric Light & Power Company, which was entirely needless if it were not a part of the levy, and intended as a compliance with sec-

tions 3894 and 3974, set out above. That the notice has a dual character we are quite willing to concede. It was a notice to the debtors and occupant of the real estate, but it was at the same time an act done as part of the levy on the shares of stock. Certainly it complied with every requirement of the statute relating to a levy on stock. Its main defect consists in the tense used of the verb "levy," and we are not inclined to allow this matter of grammatical construction to outweigh the facts of the address and service of the notice. The case of *Moore v. Opera House Co.*, 81 Iowa, 45, relied upon by appellants, is not in conflict with this holding. In that case the notice given by the sheriff was verbal, and the holding was that it should have been in writing. Finally we may say on this point: The sheriff intended to levy on these shares. He did everything necessary to constitute a levy. It cannot affect the result that he did not appreciate the importance or the effect of each specific act.

III. But, if appellants' claim on this branch of the case be allowed, we think the sale must still be held valid. We take up now for consideration the question of the necessity of a formal levy to sustain the execution sale. In Freeman, Executions, section 274, it is said the authorities are in conflict on the subject. The author, however, goes on to say that the object of a levy is to give notice to the debtor and to other persons that the property has been taken into the custody of the law. But, when both of these objects are otherwise accomplished, in his opinion the sale is valid. He admits that a sale without a levy is so irregular that on proper application it would be prevented, but concludes that after being made it is the policy of the law to protect innocent purchasers from secret vices in the proceedings. In support of these views are cited *Blood v. Light*, 38 Cal., 654; *R(    ) v. Thornton*, 19 Ga., 149; *McIntire v. Durham*, 7 Ired. 151; *Riddle v. Bush*, 27 Tex. 675. In this last case it is said the title of the purchaser does not rest on the levy. He is bound to show only a valid judgment,

execution and deed.   Any defect in the levy is but an irregu
larity of the officer, and does not defeat the title.

Before going further, we desire to emphasize two facts
of the case at bar, in order to avoid any misunderstanding:
(1)   The attack upon the sale here is made by the judg-
ment debtors; (2) no question was made as to the regularity
of any of the proceedings until after the sale was had and
the judgment cancelled.   What is noted above as said
by Freeman relates to all executions.   We have no
occasion to determine whether the rule as stated
would receive our indorsement if applied to a gen-
eral execution.   While, under our statute, no distinction
is made as to the duty to levy special executions, or the man-
ner of doing it, yet it does not necessarily follow that the
consequences of a failure to levy would be the same as in
case of a general writ.   Where execution is awarded against
specific property, the judgment designates what is to
be sold, and gives ample notice to all parties con-
cerned.   In such an instance the failure to levy
does not vitiate the sale.   *Ewing v. Hatfield,* 17 Ind. 513;
*Smith v. Burns,* 8 Kan. 197. While section 3970, Code, pro-
vides that "no execution shall be a lien on personal property
before the actual levy thereof," this does not mean there may
not be a contract lien existing before.   Every special exe-
cution is based upon a contract lien, which is confirmed and
established by the judgment.   In the case at bar the judgment
creditor had possession of the certificates under a contract of
pledge which gave it a lien that could have been enforced by
notice and sale.   Code, section 4285.   Appellants seem to
claim that, if foreclosure proceedings are resorted to, the lien
is lost after the commencement of such an action, and only re-
gained by the levy of execution.   We discover no warrant for
any such rule. Foreclosure in court is one method of enforc-
ing the contract lien, which merges in the judgment, and
there subsists, to be made effective by special execution.
Code, section 4286. As somewhat in poin in this proposition,
see *Bank v. Jackaway,* 80 Iowa, 512. It is true, the require-

ment as to notice in making the levy on stock is the same for all cases, yet reasons that support it where the certificates are in the possession of the judgment debtor do not apply to a state of facts such as exists in the case at bar. If the consequences of a failure, in the first instance mentioned, to give the notice, would be to avoid the sale, we cannot believe it was intended such a result should follow in the others. Unless the terms of the statute explicitly demand a different construction, we think a rule should never go beyond its reason, and we discover no such demand in this case.

Our conclusion on the whole case is that plaintiff is the lawful owner of the shares of stock in controversy, having acquired a valid title by his purchase at the execution sale, and that he is entitled to an order to compel the transfer of the same to him on the books of the Colfax Electric Light & Power Company. It follows from this holding that all costs should be taxed to interveners. On interveners' appeal the decree is affirmed, and on plaintiffs' appeal it is REVERSED.