[No. 18314. Department Two. May 15, 1924.]

CHRISTIE S. GOSHERT, *Appellant*, v. CATHERINE WIRTH et al., *Respondents*.[1]

PLEADING (204)—RULINGS ON DEMURRER—WAIVER OF OBJECTIONS—AMENDMENT OF COMPLAINT. While the filing of an amended complaint waives any error in sustaining a previous demurrer, an application for leave to file a fourth amended complaint which is denied, does not waive a demurrer to the previous pleading.

CORPORATIONS (66)—EXECUTION (42) — SALE — IRREGULARITIES — CONFIRMATION. Where a certificate of pledged stock, ordered sold, was actually in court and filed with the clerk on the foreclosure of the pledge, and later came into the actual possession of the sheriff who displayed it at the time of an attempted execution sale, failure to make a levy by giving the notice required by Rem. Comp. Stat., § 659, would be an irregularity only which would be cured by a confirmation of the sale.

CORPORATIONS (60)—PLEDGES (4)—CHARACTER OF TRANSACTION—OWNERSHIP OF PROPERTY—EVIDENCE—SUFFICIENCY. The fact that the pledgee of stock, to whom a certificate had been assigned as collateral security, procured a new certificate to be re-issued in her name, does not show that she was the owner of the stock at the time of a judicial sale to her on foreclosure of the pledge.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered March 17, 1923, dismissing an action to set aside a foreclosure sale, upon sustaining demurrers to the complaints. Affirmed.

*C. S. Goshert,* for appellant.

*Stratton & Kane,* for respondents Wirth.

*C. T. Roscoe,* for respondents McCulloch and West.

BRIDGES, J.—The appellant claims that his action was to set aside a judicial sale of real estate claimed by him to be void, or, in the alternative, for damages for trespass on property. The respondent contends that the nature of the action is one to remove a cloud

[1]Reported in 226 Pac. 124.

from appellant's alleged title to real estate, and to recover damages for failure to properly sell certain shares of capital stock.

Some years ago, the respondent Catherine Wirth owned a promissory note given her by one Gray. This note was originally secured by a mortgage upon certain real estate which subsequently was transferred to a man by the name of Hubbard, who assumed and agreed to pay the indebtedness. Ultimately, the note being due, Hubbard, desiring an extension of time for payment, entered into a written agreement with Catherine Wirth whereby he turned over to her certificate No. 240, representing 25,000 shares of the capital stock of United Metals Mining & Milling Company, as collateral and additional security to the note. The pledging agreement provided that the pledgee might upon default sell the property in any manner she saw fit, and might herself become a purchaser at any sale, public or private, but that the property should not be so sold for less than thirty-five cents on the dollar. Later still, Hubbard, being again in default, Miss Wirth instituted a suit to foreclose her pledge and also the real estate mortgage, making the persons interested parties defendant to that action. As a result, the court finally entered a decree directing that the 25,000 shares of capital stock, then represented by certificate No. 250, "be sold at public auction by the sheriff of Snohomish county, Washington, in the manner prescribed by law for the sale of personal property on execution and according to the course and practice of this court. . ." It further directed that, if sufficient money was not received from the sale of the capital stock to pay the judgment, then the real estate should be sold in the manner provided by law.

The sheriff first undertook to sell the capital stock,

but being unable to find a purchaser, made his return of no sale, and thereafter sold, in the manner provided by law, the real estate, which was purchased by Miss Wirth in full satisfaction of the judgment. Thereafter the appellant purchased all the right, title and interest of the Hubbards in and to the real estate and the capital stock and instituted this action. A general demurrer was sustained to each the complaint, the first, second and third amended complaints. Upon sustaining the demurrer to the third amended complaint, the court ordered ''that no further amendment to the complaint be allowed herein unless the court so orders, upon the plaintiff within ten days from date hereof filing a proposed fourth amended complaint with application for leave to amend.'' Within the ten days, the appellant made his application to be permitted to file a fourth amended complaint, which was attached to and made a part of his application. After a hearing, the court refused to permit the appellant to file this last complaint, and entered judgment dismissing the action.

The appellant presents his case here upon the theory that his original and his various amended complaints stated a cause of action and that the court erred in sustaining demurrers thereto.

The respondent first contends that the appellant is not in position to assert that the court erred in sustaining any of the demurrers, and that the only question which we can consider is whether the court abused its discretion in refusing to permit appellant to file his fourth amended complaint. This raises a question which has not previously been decided by this court.

We have a number of times held that the filing of an amended pleading, after demurrer to the original pleading has been sustained, constitutes a waiver of

any objection to the ruling of the court in sustaining the demurrer. *Bell v. Waudby,* 4 Wash. 743, 31 Pac. 18; *Prescott v. Puget Sound Bridge etc. Co.,* 31 Wash. 177, 71 Pac. 772; *Reed v. Parker,* 33 Wash. 107, 74 Pac. 61; *Hays v. Peavey,* 43 Wash. 163, 86 Pac. 170. These cases are in accord with the great weight of authority.

But we have not yet held that the making by the plaintiff of an application to file an amended pleading, after the sustaining of a demurrer and the refusal of the court to grant the application, constitutes a waiver of the objection to the action of the court in sustaining the demurrer to the last previous pleading. In this case, when the appellant actually presented and filed, with leave of the court, his first, second and third amended complaints, he waived any right to claim error in sustaining demurrers to the various previous complaints, and if the court had permitted him to file the fourth amended complaint, he would unquestionably have waived any error with reference to the third amended complaint. Or if the court, upon sustaining the demurrer to the third amended complaint, had ordered that no further amendments would be permitted, and thereafter the appellant asked leave to file an additional amended complaint, it may be that he would have waived any objection to sustaining the demurrer to the third amended complaint, because he would then have been warned of the necessity of standing on that complaint if he desired to test its sufficiency on appeal. But the order of the court expressly permitted the appellant to make application to file a fourth amended complaint. Under these circumstances, to hold that the mere presentation of the fourth amended complaint had the effect of waiving any objections to sustaining the demurrer to the third amended complaint, would be to entrap the appellant and to punish him for com-

plying with the invitation of the court to make application to file another complaint. The court, having ultimately refused to allow the filing of a fourth amended complaint, the appellant, in fairness, should be permitted to contest the correctness of the ruling of the court with reference to the third amended complaint. It must be conceded that there are two or three cases which apparently hold to a contrary doctrine, but they do not appeal to our sense of fairness. Those cases are: *Board of Comr's of Garfield County v. Beauchamp,* 18 Okl. 1, 88 Pac. 1124; *Anthony v. Slayden,* 27 Colo. 144, 60 Pac. 826; *Berry v. Barton,* 12 Okl. 221.

The third and the proposed fourth amended complaints being substantially the same, we will proceed to determine whether either states a cause of action.

The complaint, together with the exhibits attached, covers some sixty typewritten pages and the facts are many and somewhat complicated. It would take altogether too much space to undertake to give a detailed recitation of the facts alleged, or even a reasonably full summary of them. Suffice it to say that the central point of combat is the former decree of the court which foreclosed the pledge on the 25,000 shares of capital stock and also the real estate mortgage, and the direction therein that the stock be first sold by the sheriff, and that the sale of the real estate follow if necessary.

The contention of the appellant seems to be that the sale of the real estate was unauthorized and void, because the sheriff did not comply with the decree of the court to first sell the capital stock. It is conceded that the sheriff undertook to sell this stock and found no purchasers, and made his return accordingly; but it is contended that the attempted sale was void because

there was no levy by the sheriff on the stock as required by statute. It is argued that a levy upon the corporation's capital stock could only be made by service of the writ and notice upon an officer of the corporation. Section 578, Rem. Comp. Stat. [P. C. § 7893], being a part of the chapter with reference to the sale of property under execution, provides that "property shall be levied on in like manner and with like effect as similar property is attached," and that "until a levy, personal property shall not be affected by the execution." Section 659, Rem. Comp. Stat. [P. C. § 7391], provides that "stocks or shares, or interest in stocks or shares, of any corporation, association or company shall be attached by leaving with the president or other head of the same, or the secretary, cashier or managing agent thereof, a copy of the writ, and notice stating that the stock or interest of the defendant is attached in pursuance of such writ." It is claimed that these statutes were not complied with by the sheriff in his effort to sell the certificates of capital stock, consequently the attempted sale was void, and therefore the decree was not complied with, and because thereof the real estate could not lawfully be sold.

It appears that the certificate of stock was actually in court and filed with the clerk thereof at the foreclosure of the pledge, and that it later came into the actual possession of the sheriff, who displayed it at the time of the attempted sale. There may be a serious question whether the statutes which we have quoted with reference to a levy upon certificates of stock are applicable to circumstances such as exist here, where the stock is in the possession of the court and the sheriff and is pledged and a special order made by the court directing its sale by the sheriff. It could be

argued with a good deal of force that these statutes apply only to general executions for the enforcement of a general judgment, and do not apply to a sale ordered by the court under a decree of foreclosure, for in the latter instance the court already has the property under its control and jurisdiction.

So far as we know, this court has not expressly passed on this subject. An enlightening case is *Croft v. Colfax Electric L. & P. Co.,* 113 Iowa 455, 85 N. W. 761. We do not find, however, that it is necessary to decide this question here.

It must be remembered that this case stands upon the allegations of the complaint, and we have not been able to find therein any statement, or reasonable inferences from any allegations, that the sheriff did not levy upon this capital stock in the manner provided by the statutes which we have quoted. In the absence of such allegations, we must assume that these statutes were, if necessary, complied with. But if we assume that the levy was not strictly in accordance with the statute, yet such defect would be only an irregularity not affecting the jurisdiction of the court and not making the attempted sale void, and could be and, in our opinion, was, cured by a confirmation of the sale. Section 591, subd. 4, Rem. Comp. Stat. [P. C. § 7908], provides that: "An order confirming a sale shall be a conclusive determination of the regularity of the proceedings concerning such sale as to all persons in any other action, suit or proceeding whatever."

In a number of cases we have held that, where there were no such errors as will oust the court of jurisdiction, an order confirming the sale concludes inquiry into any irregularity attending it. *Parker v. Dacres,* 1 Wash. 190, 24 Pac. 192; *McHugh v. Conner,* 68 Wash. 229, 122 Pac. 1018; *Terry v. Furth,* 40 Wash. 493, 82

Pac. 882; *Johnson v. Bartlett,* 50 Wash. 114, 96 Pac. 833; *Strand v. Griffith,* 63 Wash. 334, 115 Pac. 512; *Bird v. Cox,* 105 Wash. 51, 177 Pac. 675.

In the last case cited we held that:

"If any such irregularity existed in this case, it should have been suggested by way of an objection to the confirmation, and (quoting from *Otis Bros. & Co. v. Nash,* 26 Wash. 39, 66 Pac. 111):

" 'All these irregularities were cured by the order of confirmation. Having regard to the stability of real estate titles, an order confirming a sheriff's sale must be held to be more than a formal order. It is the solemn declaration of the court that the sale has been regularly and legally made, and those who would be in position to avoid the consequences of such order must pursue the method outlined by statute by making objections in time, so that the entry of the order may be prevented, or, if entered, may be reviewed by the appellate court if desired'."

Such seems also to be the almost universal rule of the courts outside of this state.

We are therefore of the opinion that if there were any irregularities such as suggested by the appellant in the attempted sale of the capital stock, they were cured by the order of confirmation.

But it is claimed that, at the time the court ordered this capital stock to be sold, it was owned by Miss Wirth, the plaintiff in the foreclosure case, and that she being the owner of the property, it could not, of course, be sold by the sheriff, or ordered sold by the court. While the complaint seems to draw conclusions which would support the idea that the plaintiff in the foreclosure case was the owner of the capital stock, yet the exhibits—made a part of the complaint—clearly deny any such charge. One of them shows the pledge of the stock to Miss Wirth. Another shows that 2,500 shares of this stock had been issued to the original

pledgee by certificate No. 240 and that this certificate was assigned to Miss Wirth. This assignment was, of course, a part of the pledging of the stock. Another exhibit shows certificate No. 250 for 2,500 shares issued to Miss Wirth. It is plain from these facts—and it does not seem to be seriously disputed—that, after certificate No. 240 had been turned over to Miss Wirth as additional security, she procured the mining company to re-issue the stock in her name by certificate No. 250. This procedure would not necessarily make her the owner, and that she was not the owner, but held it only as collateral security, is finally settled by the decree itself which so recites. It was a final adjudication of the rights of the parties because there was no appeal therefrom. It cannot, therefore, be held that Miss Wirth became the owner of the stock or anything other than a pledgee.

What we have said will, we think, dispose of most of the other questions presented. Those not so disposed of we consider to be without merit. The demurrers to the various complaints, original and amended, were sustained by three different superior court judges, and a careful review of the matter convinces us that the complaints failed to state a cause of action. The judgment is affirmed.

MAIN, C. J., FULLERTON, and MITCHELL, JJ., concur.