MOSHANNON NAT. BANK, ET AL. v. IRON MOUN-
TAIN RANCH CO., ET AL.
(No. 1767; Jan. 24, 1933; 18 Pac. (2d) 623)
(Rehearing denied April 18, 1933)

266

For the plaintiff and appellants there was a brief by *Tipton & McGowen* and *C. P. Arnold,* of Laramie, Wyoming, and oral arguments by *Mr. McGowen* and *Mr. Arnold.*

For the respondents, the Wyoming Trust and Savings Bank, and the Stock Growers National Bank, there was a brief by *John W. Lacey, John U. Loomis* and *Edw. T. Lazear,* of Cheyenne, Wyoming, and oral argument by *Mr. Loomis.*

*Corthell, McCollough* and *Corthell,* of Laramie, Wyoming, in support of motion to dismiss appeal.

For respondents, Iron Mountain Ranch Company, Hannah Elizabeth Bosler, and the Diamond Cattle Company, there was a brief by *Corthell, McCollough & Corthell,* of Laramie, Wyoming, and oral argument by *Mr. N. E. Corthell.*

BLUME, Justice.

While the pleadings herein are voluminous, a brief statement thereof, just to show the nature of this action, will, we think, suffice for the purposes of this opinion. As appears from the petition filed in this case, the Iron Mountain Ranch Company, one of the defendants herein, on March 1st, 1912,

issued bonds in the total sum of $150,000, and to secure these bonds made and executed a trust deed, mortgaging about 45,000 acres of land in Albany County, Wyoming. The defendant the Wyoming Trust and Savings Bank, of Cheyenne, Wyoming, was named as the trustee under the trust deed, with sole power to foreclose the deed, in case of default, but provision was made, not necessary to be mentioned in detail, requiring the trustee to act in case the owners of fifty per cent of the bonds should call upon it to do so. The bonds became due on March 1st, 1927, but were not paid, and some time prior to that time, interest on the bonds had been in default. The trustee under the trust deed brought no foreclosure action, and so on March 8th, 1930, the plaintiffs herein, owners of $21,800 of the bonds, brought this action seeking to foreclose the trust deed, and asking the appointment of a receiver. To justify them in bringing this action and displace the trustee named in the trust deed, it is alleged that the trustee had been negligent; that it collected $6000 insurance money, for which it has never accounted, and that it had resigned as trustee. A number of other reasons not necessary to be mentioned here, are set out to show why the trustee is not the proper party to foreclose. It is further alleged that Hannah Elizabeth Bosler is in control of the Iron Mountain Ranch Company, as well as the Diamond Cattle Company; that she is the owner of more than fifty per cent of the bonds in question, and that she has been permitted, by and with the consent of the trustee, to appropriate all the income of the lands and divert it to her own use. These allegations were evidently made mainly with the view of showing that the provisions in the trust deed that the owners of fifty per cent of the bonds should call on the trustee to act were, under the circumstances, wholly nugatory.

On April 2, 1930, the Wyoming Trust and Savings Bank filed answer herein, denying that it had resigned as trustee, and also denying, in substance, the allegations tending to show that it was not the proper party to foreclose the

suit. On the same day, the Stockgrowers National Bank also filed answer, joining issue with the plaintiffs as to the allegations made against it. Further, on the same day, the trustee, adopting the course apparently approved in Tracy, Corporate Foreclosure, Sec. 37, filed a cross-petition in the action, seeking to foreclose the trust deed in question here. Subsequently it filed an amended and a second amended cross-petition, with the same end in view. Mrs. Bosler, the Iron Mountain Ranch Company and the Diamond Cattle Company appeared to these cross-petitions and joined issues with the cross-petitioner, but the plaintiffs herein have never hitherto appeared thereto, or joined issues thereon. Nor was anything done in connection with the issues raised by the answer of the trustee or the Stockgrowers National Bank.

On April 5th, 1930, Mrs. Bosler, the Iron Mountain Ranch Company, and the Diamond Cattle Company (sometimes called demurrants herein) each filed a demurrer to the petition. On July 5, 1930, the court found ''that the petition of the plaintiffs fails in its allegations to sufficiently show the inability and unwillingness of the defendant The Wyoming Trust and Savings Bank, trustee, to foreclose the mortgage in question, and for that reason fails to show the right of these plaintiffs to foreclose said mortgage and therefore fails to state a cause of action in the particular mentioned.'' The demurrers were accordingly sustained, and, upon request, leave was granted to file an amended and supplemental petition to correct the deficiency as found by the court in the petition. Ten days were granted for that purpose, which time, subsequently, was extended to August 15th, 1930. No such pleading was filed within this time, but on November 28, 1930, the plaintiffs filed an amended and supplemental petition, reiterating some of the allegations in the original petition, alleging a number of other reasons why the trustee is not the proper party to foreclose the trust deed, and setting out reasons why the pleading had not been filed previously. The court was asked for

leave to file this pleading. This was denied on February 24, 1931, for the reason that the foreclosure suit would thereby be delayed, but plaintiffs were given the right to remain in the suit, file whatever pleadings they desired to the cross-petition, and do any and all things "necessary to push the foreclosure proceeding" brought by the trustee, and at all times advise the court therein. Nothing further being done by plaintiffs in the case, the demurrants filed a motion on May 7, 1931, to dismiss plaintiffs' petition for want of prosecution. And still nothing further being done by plaintiffs, these motions were sustained on November 14th, 1931, and the court directed "that plaintiffs' petition be and the same is hereby dismissed for want of prosecution." An exception was taken, and from that order the plaintiffs have appealed. The errors assigned in substance are that the court erred (1) in sustaining the demurrers to the petition; (2) in not permitting the amended and supplemental petition to be filed; (3) in "dismissing plaintiffs from the case with issues of fact and of law pending and undetermined;" (4) in failing to appoint a receiver, and (5) permitting one of the defendants to oust them from prosecuting their litigation.

1. Counsel for the demurrants have filed herein a motion to dismiss the appeal for the reason that the propriety of the order of dismissal of the petition of plaintiffs, which order is the basis of the appeal herein, has not been discussed in the briefs, and hence is waived under the well known rule of this court. We are not certain that this motion should be sustained, since in any event counsel for plaintiffs have assigned the dismissal of the action as error, and howsoever invalid their arguments may be, they complain of that in their brief. Counsel for the defendants, however, have, in connection with the motion to dismiss, advanced many arguments dealing with the propriety, from a procedural standpoint, of the order dismissing plaintiffs' petition, and counsel for the plaintiffs have apparently, but mistakenly, we think, deemed these arguments to be unim-

portant. The latter have argued this case upon the theory —aside from that relating to the appointment of a receiver —that they are entitled to foreclose the trust deed and have a right to displace the trustee. But the merits on that point are not before us, unless they arise in connection with the order of dismissal from which this appeal is taken, and as will appear later, they do not, we think, so arise. The right to dismiss the petition must necessarily depend upon the facts in each case. In this instance it is dependent, it is true, to a material extent upon the proceedings had in connection with the demurrers to the petition, and the supplemental and amended petition subsequently sought to be filed, and we are therefore compelled to consider the assignments made by the plaintiffs in connection therewith, but, as will appear clearly hereafter, from a standpoint altogether different from that adopted by the plaintiffs. And while the situation in the case at bar seems, at first glance, to be confusing, an analysis thereof will, we think, show it to be comparatively uninvolved, and demonstrate the correctness of the conception thereof in the mind of the trial judge.

2. The first two assignments of error relate to the order sustaining the demurrers filed herein. The record shows, as already stated, that at the time when this order was made, the plaintiffs asked leave to file an amended and supplemental petition to correct the deficiency found by the court to exist in the petition as filed. Ten days time, accordingly, was given, in which the plaintiffs might do so. This was on July 5, 1930. No such pleading was filed within the specified time, and on July 18, 1930, the court, on application, extended the time to and including August 15, 1930. Without compliance with the order of extension, plaintiffs tendered a pleading called amendatory and supplemental petition out of time, namely, on November 28, 1930. They at no time indicated that they would stand upon their original pleading. We think it clear, accordingly, that they are no longer in position to assign the order sustaining the de-

murrers as error, but must be held to have waived the error, if error it was. Doyle v. Sycamore, 193 Ill. 501, 61 N. E. 1117, 1118; Wickham v. B. & L. Ass'n., 80 Ill. App. 523; Coplan v. Eastwood, 33 S. D. 229, 145 N. W. 431; Berry v. Barton, 12 Okl. 221, 71 Pac. 1074, 1075, 66 L. R. A. 513; Wagner v. Thorpe, 151 Okl. 142, 2 Pac. (2d) 1027, and cases there cited; Hurd v. Smith, 5 Colo. 233; Sholes v. State Bank, 82 Colo. 432, 261 Pac. 456; Banker's etc. Assn. v. Finn, 64 Nebr. 105, 89 N. W. 672. In Doyle v. Sycamore, supra, the court said:

"The record shows that the demurrer was sustained, and leave given defendant to file amended pleas. The rule is elementary that where a party acquiesces in an order of court sustaining a demurrer to a pleading and takes leave to plead again, he cannot afterward assign error upon such ruling."

The point was considered at length in Berry v. Barton, supra, where the court among other things said:

"It is not necessary to decide in this case as to whether the second count in the answer stated a defense, for the reason that when the demurrer was sustained the defendants were granted leave to amend, and by taking leave to amend they waived the error, if any, in the sustaining of the demurrer. In order to take advantage of the ruling on a demurrer when it is sustained, the party must stand upon his pleading held to be defective, and not amend. While there are cases the other way, the great weight of authority supports this doctrine. * * *

"But it is argued that in this case the defendants did not plead over, and therefore they are in a position to urge as error the sustaining of the demurrer. This position cannot be sustained. It is true that nearly all of the cases state that by pleading over after a demurrer has been sustained a party waives the error, if any has been committed by the court in such ruling. The rule not only applies where the party actually pleads over, but also where he takes leave to plead over after a demurrer has been sustained to his pleading. It is the intention of the party, as indicated by his acts at the time, which fixes his standing in court. By

taking leave to amend, he thereby indicates his intention to abandon his former position and to draft his pleading upon a different theory, or to state his cause of action in different language. By taking leave to amend, he admits the insufficiency of the pleading, and he is bound by his own conduct, and cannot afterwards take advantage of it. Any other rule would permit delays under the guise of a desire to submit to the ruling of the court and amend, when in fact the party had no intention of amending. Courts everywhere insist upon such rules of practice and conduct of parties litigant as will promote justice, and such as will not encourage or countenance deception. The attorney is supposed to know the law of his case equally as well as the court, and inasmuch as the statute, with the permission of the court, allows a party, at his own election, to amend or stand on his pleading, it is only fair that he should make his election, and then be bound by it; and, if he elect to amend, he cannot afterwards, simply because his own views of the law may have changed, or further investigation convinced him that his former position was correct, urge error in a ruling which he had accepted as the law. When he elects to amend he abandons, not necessarily his view of the law as urged against the demurrer, but that particular pleading, and it is just the same as though it had never been filed; and a party who expressly abandons a pleading cannot at his own election, without permission of the court, urge it as an existing pleading in the case.''

The point was also considered at length in Coplan v. Eastwood, supra, where the court held that taking leave to amend waives the error of the ruling on the demurrer, though no amendment is actually filed, and in addition to quoting approvingly from Berry v. Barton, supra, says:

''Respondents contend, and we think correctly, that appellant, by asking and obtaining the order granting him leave to amend his complaint, elected to abide by the ruling of the trial court, and by such election lost his right to appeal from that part of the order which sustained the demurrer. * * * The plaintiff saw fit to ask for leave to amend, and such leave was granted. The granting of such leave rested in the discretion of the trial court—appellant

could not demand it as a matter of right. There was no reason for plaintiff to seek a modification of the order sustaining the demurrer unless he desired to amend. Attorneys for plaintiff must be presumed to know the law of their case, and therefore to know whether they desired to rest on their former pleading, or desired to confess the demurrer by pleading over; their request for leave to amend was an expression of their election. * * * We think the principle involved herein is the same as that underlying the decision in Sun Printing & Pub. Ass'n. v. Abbey Salt Co., 62 App. Div. 54, 70 N. Y. Supp. 871, wherein the court said: 'After the orders striking out a portion of the defendant's answer and directing judgment had been made and entered, the defendant, upon the basis of these orders, applied to and obtained from the court, at Special Term, leave to serve an amended answer correcting the defects alleged to have existed in the answer originally served. The application was addressed to the discretion of the court, and when leave was given, it was as a favor to the defendant. Having obtained this favor by reason of the existence of such orders, the defendant was thereafter precluded from appealing from them. It could not accept a favor from the court by reason of their existence and thereafter assert that the orders had been improperly made, or be heard to question their validity.' "

The Iowa Supreme Court in Farmers' etc. v. School Twp. etc., 118 Iowa 540, 92 N. W. 676, announced a rule somewhat less strict, holding, that there is no waiver if the party taking leave to amend subsequently obtains leave from the court to withdraw his request. And in West v. Wright, 98 Ind. 335, the court apparently holds that if there is a withdrawal of the leave to amend in some effective way, no waiver will result, the court saying: "The case of Hurd v. Smith, 5 Colo. 233, cited by counsel is not authority here, because, in that case, the leave to amend was not withdrawn." In Goshert v. Worth, 130 Wash. 14, 226 Pac. 124, it was held that if leave to file an amended pleading is given, and one is presented in time, and then refused, the ruling on the previous pleading is not waived. And in O'Halloran v. Marshall, 8 Ind. App. 394, 35 N. E. 926, the

court restricts the rule still further than was done by the Supreme Court of Indiana, holding there is no waiver until the amended pleading is actually filed. In the case at bar, there was no request to withdraw the leave taken; there was no withdrawal without request; in fact the supplemental and amendatory petition was actually filed, and leave asked therein to be permitted to file it. Par. 9, of that pleading, hereinafter more fully mentioned, indicates that plaintiffs had waived the error on the ruling, if any, but that they changed their minds on account of the fact, as alleged, that the trustee had not acted sufficiently diligently. Moreover, they still persist in claiming that the court should have permitted the supplemental and amendatory petition to have remained on file, thus showing that even now they do not stand on the allegations in the petition alone, thereby apparently confessing the insufficiency thereof. See 49 C. J. 457, where it is said that if leave is asked to amend a pleading that has been demurred to, the demurrer is thereby confessed. We cannot, accordingly, see how, under these facts, and without going as far as most of the authorities do, we can hold otherwise than that the error in the ruling on the demurrers, if any, was waived, and cannot now be assigned as error.

3.   Plaintiffs next complain that the court erred in not permitting them to file their supplemental and amendatory petition. Here, doubtless, is the vital point in the case, since the ruling on the demurrers would, perhaps, have been immaterial or comparatively unimportant, if the court had considered the supplemental and amendatory petition. But unfortunately, this was not tendered until November 28, 1930, three months after the time fixed by the court. And the rule appears to be undoubted that, whether, after the time fixed by the court, further time shall be given, rests within the discretion of the court, and that it may properly refuse to allow an amendment not filed or allowed within the time fixed by it. 49 C. J. 457-458; Marbury v. Farmington, (Mo. App.) 5 S. W. (2d) 677; Hald v.

Ass'n., 34 Ga. 39, 128 S. E. 218; Atlantic Refining Co. v. Peerson, 31 Ga. App. 281, 120 S. E. 652. And it must be apparent that we cannot tread upon the prerogative of the trial court, and change or save a situation created by the plaintiffs themselves, unless, perchance, an abuse of discretion is shown to exist. But the only excuse given for not filing the pleading previously appears to rest upon the claim that plaintiff relied upon the trustee pressing its application for the appointment of a receiver. The allegations are:

"9. These plaintiffs believing that the application for the appointment of a receiver so made by the Wyoming Trust and Savings Bank was made in good faith, relied in good faith upon its securing a receiver and did not file an Amended Petition and Supplemental Petition herein, lulled into a sense of false security. The said Wyoming Trust and Savings Bank did not make its said application for a receiver in good faith. More than six months has passed since it made its said application and more than four months has passed since the making of the order by the court last referred to with no action taken on the part of the Wyoming Trust and Savings Bank."

The allegations indicate that the plaintiffs would have been satisfied to have the trustee proceed in the case, and not press their own claim to the right to foreclose any further, had it not been, as alleged, for the fact that the trustee did not press its application for a receiver, as mentioned. But we do not think that this was such an excuse as to authorize us in holding that the trial court abused its discretion. Up to August 15th, 1930, in any event, the plaintiffs on the one hand, and the trustee on the other, were claiming the right to foreclose. Up to that time, the trustee did not, and could not, know definitely the attitude of the court as to its rights in the case. Nor did it know that the court might not again extend the time for filing the supplemental and amendatory pleading. The least that plaintiffs could have done, if they expected the trustee to proceed vigorous-

ly, would have been to have indicated to it their desire to abandon their claim to the right to foreclose and that they expected it from that time on to proceed diligently. But nothing of that kind was done, or is alleged to have been done. And we think, accordingly, that the court did not abuse its discretion in refusing to let plaintiffs' supplemental and amendatory petition remain on file.

4. It would seem that in view of what has been said, all other assignments of error herein must necessarily be held to be without merit so far as this proceeding is concerned. When the petition was taken out of the case by the order sustaining the demurrers and the supplemental and amended pleadings fell by the wayside because not filed in time, the court could not well do anything else than to dismiss plaintiffs from the case, unless the latter chose to come into it again by other proper pleadings which the court gave them the privilege to file, but of which privilege they did not choose to avail themselves. The situation here is exactly as though no supplemental and amended pleading had been filed. The Supreme Court of Oklahoma in Battle v. Epperson, 135 Okl. 27, 274 Pac. 17, 18, quoting from a previous case of Cates v. Miles, 67 Ok. 192, 169 Pac. 888, said:

"Where a demurrer to a petition is sustained, and the plaintiff is granted time in which to amend, the error, if any, in sustaining said demurrer is waived, and cannot be assigned as error; and the judgment of the court dismissing the plaintiff's cause of action, where he fails to file an amended pleading under the state of the case above given, is proper."

Again, in State ex rel. Freeling v. Martin, 65 Okl. 60, 162 Pac. 1088, 1089, 1090, the court under similar circumstances said:

"When the plaintiff below failed to amend within the time alloted the court dismissed the petition, which should have been done, and there was no error in so doing."

In Hahn v. McBride, 88 Ohio St. 511, 103 N. E. 760, 761, a demurrer to a petition was overruled. That ruling was reversed on January 25, 1911, holding that it should have been sustained. The case was then set down for trial, and the plaintiff did not appear. The case was then dismissed. Thereupon a motion to reinstate was made, which was refused. The court, in discussing the right to dismiss a case after a demurrer to the petition is held to be good, says:

"That judgment (holding that the demurrer to the petition should have been sustained) was entered on January 25, 1911. No effort was made by the plaintiff to amend his petition till June 7, 1911, after the cause had been dismissed for want of prosecution, when an amended petition was sent through the mails to counsel for defendant, requesting his consent to file the same. There having been a final adjudication on January 25, 1911, that the petition of the plaintiff did not state a cause of action, it thereupon became the duty of the plaintiff to file an amended petition within a reasonable time thereafter, and his failure to do this for almost five months was sufficient to authorize the trial court to dismiss the action for want of prosecution without reference to failure of plaintiff to appear on the day the cause was regularly assigned for trial."

As already stated, the situation in the case at bar is the same as though no amended or supplemental petition was ever filed, and the plaintiffs are, accordingly, in the same position as though they had done nothing from the time when the demurrers were sustained in June, 1930, to November 14th, 1931. Their counsel do not suggest how the deadlock thus created could have been broken in any way other than by the method taken by the court. It would seem that even they must be willing to concede that this situation could not be permitted to go on that way forever. The only other possible way to have solved the difficulty would have been for the court to have reversed its rulings theretofore made. It was not compelled to do that. Hence we are back to the point from which we started, namely, as to whether or not the ruling on the demurrers and the re-

fusal to let a pleading be filed out of time, can here be complained of, and as we have seen, that is not true here.

Counsel complain that the court dismissed plaintiffs from the case for lack of prosecution, when issues of fact and of law were pending and undetermined. Reference is made mainly to the issues with the trustee. But the demurrants were entitled to a ruling on their motions to dismiss, so far as they were concerned, and were not compelled to wait indefinitely until the plaintiffs saw fit to bring the issues with the other defendants to trial. Furthermore, the demurrants were entitled to be heard on these very issues; they, or at least part of them, were indispensable, and in fact the main, parties. A hearing without them could, in view of the peculiar situation here, accomplish nothing. And when, by reason of the rulings of the court, the plaintiffs were out of the case so far as the demurrants were concerned, the only course open to prevent further delay would seem to have been that taken by the court. See Page v. Town of Gallup, 26 N. M. 239, 191 Pac. 460; Collin County School Trustees v. Stiff, (Tex. Civ. App.) 190 S. W. 216; Adams v. Bankers' Life Co., (Tex. Com. App.) 36 S. W. (2d) 182; Butman v. Jones, (Tex. Civ. App.) 24 S. W. (2d) 796. In addition to this there was, we think, ample power to dismiss the petition as to the defendants other than the demurrants on an independent ground. Section 89-2204 gives the court power to dismiss the petition in favor of one or more defendants in case of an unreasonable neglect on the part of the plaintiff to proceed in the cause against the defendant or defendants served. No motion to dismiss is essential, and the court may do so, accordingly, on its own motion. Denton v. Walker, 90 Okl. 222, 217 Pac. 386. And there seems to be no doubt that the court has inherent power to dismiss for want of prosecution. 18 C. J. 1192; People v. Jeffords, 126 Cal. 296, 58 Pac. 704. It was the duty of the plaintiff to expedite the case to final hearing. Raggio v. R. Co., 181 Cal. 472, 185 Pac. 171. The trustee and the Stock Growers National Bank, who filed an answer herein,

were not, in so far as they were defendants herein, compelled to give any attention to the cause with a view of forcing the issues joined between them and the plaintiffs to trial, but could remain passive. Crossby v. Di Palma, (Tex. Civ. App.) 141 S. W. 321, 325; Berry v. Learner, 113 Cal. App. 651, 299 Pac. 82; Oberkatter v. Spreckles, 64 Cal. App. 470, 221 Pac. 698. The duty, then, to bring the issues to trial was on the plaintiffs. They failed to do so. The answers mentioned were filed April 2, 1930. Nothing whatever was done to try the issues thus raised up to and including the time of the dismissal of the petition of plaintiffs. The intervening time was so great that we cannot hold that the action of the court should be considered an abuse of discretion.

It follows that the judgment herein must be affirmed, and it is so ordered.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.

#### ON PETITION FOR REHEARING

BLUME, Justice.

A petition for rehearing has been filed herein. We held in this case that the court's order dismissing plaintiffs' petition was not erroneous for the reason that there was nothing else to do in view of the fact, mainly, that (1) the ruling sustaining demurrers to the petition had been acquiesced in, and (2) because the trial court did not err in refusing, in its discretion, the filing of an amendment which was offered out of time. The rules of law cited in our opinion, in support of our decision, have not been attacked, and we think, cannot be, but counsel seem to think that we misconceived some of the facts, namely, the scope of the court's ruling, or the reasons given therefor. Thus it is said that we erred in assuming that when the court sustained the demurrers filed in the case in the language set out in the original opinion, it thereby held that the petition in the case failed to state a cause of action. In the ordinary case, of course,

when a demurrer is sustained to a petition, on the ground that it fails to state a cause of action, the plaintiff must either stand upon his petition, and appeal, or he must file an amendment, and that within the time given by the court. If he fails to take either course, the necessary effect will be that he is out of the case. Counsel, in saying that we erred as above mentioned, evidently believe that no such result as just stated followed in the case at bar, and they contend that they remained in the case as plaintiffs, even as against the demurrants, and that the ruling of the court had no effect on their status. We think that counsel have mistaken the effect of the ruling of the trial court. Their contention, if correct, would virtually mean that the ruling of the court was an idle gesture. That cannot be so. When the court held that, under the allegations of the petition, the plaintiffs had no right to foreclose the mortgage in suit—i. e., had no standing as plaintiffs, it necessarily held that the plaintiffs' petition did not state facts sufficient to constitute a cause of action. It is not enough that a plaintiff alleges a cause of action existing in favor of some one; he must show that it exists in favor of himself. 49 C. J. 140. If it does not, all other points or issues are wholly immaterial, so far as he is concerned. In the case of The Central Ohio R. R. Co., et al. v. City of Belaire, 67 O. S. 297, the court said:

"To enable a plaintiff to recover, his petition must disclose a cause of action in favor of the plaintiff and against the defendant; and if the petition discloses a good cause of action against the defendant, but at the same time shows that the cause of action is not in favor of the plaintiff, the petition is demurrable on the ground that it does not state facts sufficient to constitute a cause of action. Buckingham v. Buckingham, 36 O. S. 68; Zinn v. Baxter, 65 O. S. 341, 369."

In the case of Higgins v. Swygman, 194 Ind. 1, 7, 141 N. E. 788, the court said:

"However clearly a complaint or petition may show the existence of a right of action in favor of somebody who did not file it, a demurrer under the fifth subdivision of Sec. 344, Burn. 1914 (Acts 1911 p. 415 Sec. 2) should be sustained to it, if it fails to state a cause of action in favor of the party or parties in whose name it is filed," (citing many cases.)

The fifth subdivision mentioned provides that a demurrer may be filed to a petition for the reason "that the complaint does not state facts sufficient to constitute a cause of action." To the same effect as the foregoing decisions is the case of Asplund v. Hannett, 31 N. M. 641, 642, 249 Pac. 1074, 58 A. L. R. 573. And we cannot see how the trial court can be said to have construed the situation differently. The plaintiffs sought to foreclose. They claimed the right to do so, and sought to displace the Wyoming Trust and Savings Bank. The court held that the petition did not disclose facts giving the plaintiffs the right to displace the bank. In other words, it held that the plaintiffs had no standing in court as plaintiffs, and that is the only standing they had. Hence it is inconceivable how the effect of the ruling of the court could be different from that in any other case in which the court holds that the petition fails to state a cause of action. Whether the court was right or not is not the point. The plaintiffs acquiesced in that ruling, and must necessarily bear the consequences. Nor can we see how it can be said that they are thus put out of court on a technicality. A different holding would lead to chaos in procedure.

Counsel further complain of our holding that the trial court did not abuse its discretion in letting the amendatory petition be filed out of time, and contend that no such question was in the case. They say:

"This court in its opinion seems to turn our case upon a question of discretion vested in the trial court to deny the plaintiffs to file a supplemental petition. Strangely enough this question finds its origin in the appellate court rather

than in the trial court. At no time, either in court or out of court, did the chancellor ever indicate that the supplemental petition was refused as a matter of discretion because it was filed too late.''

It was vigorously enough pointed out in the briefs of the defendants on the original hearing herein that the amendatory and supplemental petition of plaintiffs was filed out of time, and we could not escape dealing with that point, even had we desired to do so. It is true that the court, when entering its ruling, did not specifically refer to it. But it does not follow that its decision was not, at least partially, based thereon. In fact it is hard to believe that the court did not have the point in mind, when it had fixed a definite time for filing amendments, and had extended that time to a definite date. But even if the contrary is true, that could not affect the law of the case. Counsel cannot be unaware of the familiar rule that ''where a judgment or order is correct, it will not be reversed on appeal because the trial court has based its decision on insufficient or erroneous reasons or grounds.'' 4 C. J. 663. The assignment of error in this connection is that the court erred in not permitting the amendatory and supplemental petition to be filed. We have held that there is a sufficient reason in law for the ruling of the court. We could not, accordingly, reverse the trial court, even though we should also be of the opinion that the court gave an insufficient or wrong reason for its action, and a review thereof would be useless.

Counsel say that we should have decided the case upon its ''merits.'' Now what do they mean by that? Evidently, that we should have decided that the allegations of their petition and amendatory and supplemental petition are sufficient to show that they have the right to conduct the case as plaintiffs and displace the Wyoming Trust and Savings Bank. But for us to determine that point, it would be clearly necessary to review the decision on the demurrers, and hold that it was wrong, notwithstanding the fact that the plaintiffs acquiesced in it; and it would be necessary to

set aside the ruling of the trial court denying the right to file the amendatory and supplemental petition, notwithstanding the fact that it was filed out of time. Hence we are back to the points already discussed, and to do what counsel would have us do would, of course, be violative of every fundamental principle of orderly appellate procedure, making this court the trial court, and relegating the District Court to the rank of a mere commissioner. We cannot do that. Counsel argue that a number of the cases cited in our original opinion were decided on their "merits;" that is to say, were not dismissed. That is true, but under circumstances entirely different from those here presented. In some of them, for instance, the ruling on the demurrer went only to part of the causes of action or defenses. We need not point out the differences in the other cases.

Again, it is said that we should have modified the order of the court dismissing plaintiff's petition, and point out some way by which plaintiffs could receive back their status in the case. But there was nothing to modify, since we found the order to be wholly right. It is true that in some cases, which are reversed, this court will give directions as to what should be done in a future trial, but we do not think that we should, upon the affirmance of an order or judgment, ordinarily at least, point out how the defeated party may come back into the case, or decide whether or not the judgment already rendered is *res judicata*. These points are clearly not in this case, and may never arise, and our decision thereon would be purely *obiter dictum*. Coplan v. Eastwood, 33 S. D. 229, 145 N. E. 431, is not to the contrary. There a final order of dismissal had not been entered. As to what course counsel for plaintiffs should adopt in the future should, in the first place, be determined by them, for, as pointed out by themselves, citing Berry v. Barton, 12 Okl. 221, 71 Pac. 1074, "the attorney is supposed to know the law of his case equally as well as the court." They would have us believe that their clients are to be com-

pared to innocent lambs, and the defendants to a pack of wolves, and that the former are being led to slaughter by the latter. We think that the comparison is hardly fair, for this reason, if no other, that the lambs in this case, if any, had, at least in the person of the senior counsel for plaintiffs, a shepherd, tried and true, fearless and with ample ability to drive off any wolves that might come, as the bar and the courts of this state will gladly attest.

A rehearing is denied.

KIMBALL, Ch. J., and RINER, J., concur.