BOYD et al. v. SCHNEIDER et al.'

(Circuit Court of Appeals, Seventh Circuit. April 12, 1904.)

No. 1,034.

1. NATIONAL BANKS—NEGLIGENCE OF DIRECTORS—STOCKHOLDERS—RIGHT TO SUE.

The national bank act, providing for the administration of the affairs of an insolvent national bank by a receiver appointed by the Comptroller of the Currency, does not prevent depositors of an insolvent bank from maintaining a suit against its directors for negligently permitting its officers to loan the bank's assets in violation of such act, constituting a breach of the bank's implied contract with such depositors, inherent in the contract of deposit, that the bank would use such deposits and its other assets in conformity with the safeguards provided by law.

2. SAME—EQUITABLE JURISDICTION.

Where several depositors of a national bank had claims against a number of the bank's directors, arising out of their failure to take steps to prevent the bank's assets being improperly loaned, and none of such depositors could, by separate suits at law, recover that to which he was entitled, such depositors were entitled to maintain a single suit against such directors in equity.

3. SAME—MULTIFARIOUSNESS.

Where the right of each of several depositors of an insolvent national bank to recover against several of the bank's directors, made parties to the bill, was based on the same theory, the bill was not multifarious.

4. SAME—SURVIVAL OF ACTION.

An action by depositors against directors of an insolvent national bank to recover damages for breach of the directors' implied contract to see that the bank's assets were used in the manner prescribed by the national bank act is an action on contract, and survives against representatives of deceased directors.

5. SAME—AMENDMENT OF BILL.

Where several depositors of an insolvent national bank filed a bill against its directors for a breach of their implied contract to see that

the bank's assets were used according to law, but the bill failed to allege the time when complainants' deposits were made, complainants were entitled to leave to amend in that respect.

6. SAME—PARTIES.

That certain of the defendants sued were not directors of an insolvent bank at the time acts of mismanagement complained of occurred, did n)t exempt them from liability to depositors, where it appeared that during their term of office dividends were paid from the capital, which was also alleged as a ground of action.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

See 124 Fed. 239.

The bill was by appellant, a depositor of the National Bank of Illinois, on behalf of himself and all others who might join him, against appellees, directors of the bank, to recover losses to the assets of the bank, otherwise distributable to the depositors and creditors, alleged to have been brought about by the negligence and misconduct of such directors.

The bill shows that the National Bank of Illinois, organized in 1871, and granted an extension of corporate existence in 1891, was, until closed by the comptroller of the currency, December 19th, 1896, engaged in a general banking business in Chicago, its capital stock after 1891 being one million dollars; that on the failure of the bank, it had more than eleven million dollars on deposit from more than four thousand depositors; that the deposits of the appellants, twenty-six in all, amounted to more than four hundred and forty-seven thousand dollars; that the depositors have received from the receiver but seventy per cent. of their deposits; that the remaining assets do not exceed in value two millions of dollars, leaving a deficit of over a million and a half dollars; and that the insolvency of the bank began about 1893, its assets steadily decreasing from that time until it was closed in 1896.

The bill sets out with particularity various acts of alleged neglect of duty, and misconduct, among which may be stated as the most important the following: (1) That Hammond, vice-president, and Moll, cashier, owners of interests in the Calumet Electric Railway Company, and left by the directors to their own discretion, began in 1891 to loan to such company, both in its own name and the names of its officers, employees and agents, sums that amounted at the time of the failure to three million five hundred thousand dollars, upon the collateral solely of the assets of said company; that to evade the provisions of the national banking act respecting the amounts loanable to any one person, five hundred thousand dollars of the amount thus loaned was carried on the books of the bank in an account known as "foreign exchange"; that the loans were made ostensibly to employees of the company, some of whom lived on small salaries, had no financial standing, and except one or two of the officers, had no interest in the property; that all the loans, together with the real purpose for which, and the real borrowers to whom, the loans were made, were discernible on the books of the bank; and that the present value of the assets of the Calumet Company are not to exceed two millions of dollars;

(2) That Schneider, the president of the bank, left to his own discretion by the directors, loaned, without security, to a soninlaw, and to two corporations of which such soninlaw was president, sums exceeding half a million of dollars, all of which was lost; also, without security, to the firm of E. S. Dryer & Company, one member of which was another soninlaw, sums exceeding a half million of dollars, all of which was lost;

(3) That during all this time, and up to the failure, the bank continued to pay dividends to its stockholders out of its capital stock.

The bill shows that the bank kept a discount ledger on which were entered all the loans from day to day, showing the names of the borrowers, and the security, if any, including the loans above set forth, which discount ledger was always open to the inspection of the directors; that the bank also kept an offering book, but such book contained, not the loans asked for, but the loans made from day to day, which book was on various days, submitted to such

directors as called at the bank, and the loans entered in most cases, marked as approved by certain of the directors.

The bill shows that in December, 1895, the comptroller of the currency wrote each one of the directors, calling attention to the fact that the loans to the Calumet Company amounted at that time to one million one hundred and seventy thousand dollars, and notifying them that such loans were in violation of law and good banking; that such letters were received by each of the directors, and their receipt acknowledged; that in June, 1896, another warning of like character from the comptroller of the currency was sent to the directors; but, notwithstanding these notices, the Calumet Company, in the way already pointed out, was allowed to increase its then existing loans by a million of dollars, and dividends continued to be paid.

The bill further avers that the directors, knowingly and wilfully, permitted the officers of the bank to violate the provisions of law relative to the bank; that none of them made diligent or reasonable effort to see to it that the total liabilities to the bank of any one person, did not exceed the amount designated by law, but that they knowingly and negligently sanctioned the practices by which such provisions of law were evaded; that they knowingly and negligently sanctioned or permitted, in the form of dividends, the withdrawal of portions of the capital stock; that they failed to see that correct books of account were kept, or proper business methods followed in regard to such books; negligently suffering the accounts to be falsified; that they did not exercise due care in the selection and retention of the officers of the bank, permitting Hammond, vice-president, and Moll, cashier, interested as stockholders in the Calumet Company, to largely control the affairs of the bank, and use and lend its money and assets as they saw fit; that no finance or auditing company was given supervision over the making of loans; and that through this and other means, the losses suffered by the bank are directly traceable to the negligence of the directors.

The bill shows that the receiver of the bank has been asked to bring suit against the directors, to recover the amounts thus lost; that to the comptroller of the currency the same request has been made; but that the request has by both of them been denied. The bill prays that an account may be taken of the assets of the bank lost through the negligence, carelessness and misconduct of the directors, and each of them, that the amount each of the directors should be held responsible for may be ascertained, and each decreed to pay the amount so found due from him; to the receiver of the bank, to be by such receiver distributed in accordance with law.

The bill was demurred to, first for multifariousness; second for want of particularity; third that there was no proper allegation of interest of the complainants therein prior to the date on which the bank failed; fourth, that the remedy is at law; and fifth, that certain paragraphs therein state an action of deceit. The demurrer having been sustained, complainants asked leave to amend to show that they had been depositors continuously for more than five years prior to the failure of the bank; but such amendment was denied.

The further facts are stated in the opinion of the court.

William Burry and F. B. Johnstone, for appellants.

John J. Herrick, Joseph B. Leake, Jesse A. Baldwin, John P. Wilson, and E. Allen Frost, for appellees.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

GROSSCUP, Circuit Judge, after the foregoing statement of facts, delivered the opinion of the court.

We do not deem it necessary to pass on the question whether, between directors of a national bank and its depositors, there subsists such a trust relation as would bring this case, as one arising out of a trust, under equitable cognizance; nor need we pass upon appellants' contention that the receiver of a national bank, being a trustee for the depositors, who has refused to bring action, courts of equity on that ac-

count are clothed with jurisdiction to proceed against the directors at the suit of the depositors. In our judgment the case stated in the bill is one of equitable cognizance, but on considerations entirely distinct from the propositions just stated. To this we will recur after dealing with some of the affirmative propositions of the appellees.

The chief insistence of the appellees is, that the right of action stated in the bill, if anything at all, is an asset of the bank vested by law in the receiver on his appointment, and therefore not one on which simple contract creditors are entitled to bring suit. If there be no privity of contract, or obligation of duty, between the directors and the depositors, this contention may be sound; but if the nature of the contract of deposit is such that the duty of the directors in the premises runs directly to the depositors, there can be no doubt that the depositors can, in their own right, bring such action as may be essential to the fulfillment of their rights. This leads to an examination of the nature of the relation that subsists between the directors of the bank and its depositors.

The relation of depositors to the bank, and so far as directors stand liable for the doings of the bank, the relation of the depositors to the directors, while that of debtor and creditor, is something more than the mere relation of debtor and creditor. The contract of deposit is a loan; but not a loan pure and simple. On the acceptance of the deposit, a promise is raised that the bank will repay it on demand, or at the time stipulated; and to that extent the transaction is a loan. But when this much is said, the whole contract is not stated. The parties deal with each other on a basis, not merely that of borrower and lender, but on the basis, that the party receiving the money is a bank, organized under the laws of the United States, and subject to the provisions of law, present and future, relating to the custody and disposition of the money deposited; and that the party loaning the money is a depositor, leaving his money with the bank on the faith that such provisions respecting the custody and disposition of the deposit, will be observed. In legal effect, the depositor says, Here is my money; in consideration of its reception, and such interest as you pay, you can have its use; but only on this condition, that the use conform to the safeguards provided by the law. The acceptance of money thus tendered, implies that the bank and its directors, so far as they are responsible for the doings of the bank, agree to conform to the conditions named. The law governing the custody and disposition of deposits thus enters into and forms a part of, the relation created between the parties (Walker v. Whitehead, 16 Wall. 314, 21 L. Ed. 357); thereby creating direct privity of relation between the directors and the depositors.

The bill clearly shows that the deposits in the custody of the National Bank of Illinois, as an entirety, were used and disposed of contrary to the provisions of law relating to custody and disposition. The deposits were disposed of in sums, and to persons forbidden by law; and were used to pay dividends when no dividends had been earned. The bill shows also, that the directors had knowledge of some of these violations of law, such as the payment of dividends out of the capital stock, and the increase of loans in large amounts to the Calumet Company, after notice from the comptroller that such loans were contrary to law; and also, that of other violations of law they would have been advised,

had reasonable diligence on their part been exercised. It seems clear to us that on such a state of facts, the directors are answerable in some kind of action, directly to the persons to whom their duty ran; and that, to the extent that the depositors suffered losses therefrom, the right of action, whatever it may be, runs directly to the depositors as a class. The question is not determined by whether the amount thus recovered might not become an asset of the bank; but whether, aside from that, the depositors may not enforce the liability as a right special to them— a right growing out of the contract of deposit, and not common therefore, to stockholders and other creditors not depositors. Unless the national banking act cuts deep enough to cut out these individual rights of action, the depositors have, in some form, a right to bring action on the claims set forth.

The national banking act provides a system for the collection of the assets of an insolvent bank, and their distribution among creditors. The legal machinery for this is a receiver appointed by the comptroller of the currency, and removable by him, in whom is vested all rights of receivership, to the exclusion of all other receivers or assignees; assessments leviable by the comptroller against the stockholders; and procedure for the allowance of claims, the payment of dividends, and the distribution of money thus collected. All this, however, is in the nature of administration. Barring the matter of assessment, it puts into the hands of receiver and comptroller only such powers as the bank itself had before becoming insolvent. It substitutes for the bank solvent, the machinery provided for the bank insolvent. Now the bank solvent, may sue and be sued, complain or defend in any court of law or equity, as fully as natural persons. We see in the act no reason to say that the bank insolvent, does not possess the same status; only it is exercisable through the receivership provided by law. There is no provision that exempts the insolvent bank or its directors, from suit (Kennedy v. Gibson, 8 Wall. 498, 19 L. Ed. 476); no provision that evinces an intention on the part of congress that persons having direct legal relations with insolvent banks, or their directors, may not have such relations interpreted and enforced through the judicial department of the government.

The cases called to our attention by the appellees do not bear upon this point.* These cases hold that national banks cannot, at the suit of creditors, be thrown into bankruptcy, or their affairs wound up in accordance with the statutes of states providing for the winding up of corporations. But proceedings to wind up, and bankruptcy proceedings, are essentially administrative. No one doubts the power of congress to provide the machinery for such administration, and no one doubts the intention of congress, in the enactment of the national banking act, that to the extent national banks were concerned, such machinery should be embodied in the powers conferred upon the comptroller. But it is one thing to make provision for the administration of the affairs of an insolvent or dead bank—provision that will exclude

*In re Manufacturers' National Bank, 5 Biss. 499, Fed. Cas. No. 9.051; Washington National Bank v. Eckels (C. C.) 57 Fed. 870; Kennedy v. Gibson, 8 Wall. 498, 19 L. Ed. 476; Pahquioque Bank v. Bethel Bank, 36 Conn. 325, 4 Am. Rep. 80.

all other forms of administration; and quite another thing to deny to parties their constitutional right to appeal to the courts for the enforcement of contract or other legal obligations. So distinct are these matters in their legal nature, that we cannot conclude from the presence, in a statute like the national banking statute, of the one, an intention to include also the other. On the whole matter our conclusion is, that considering arguendo that the receiver might have brought the action stated in the bill, his right to bring such action is not exclusive; and that, to the extent the directors are responsible specially to the depositors, the depositors have a right of action—an action, adequate to the fulfillment of the obligation due the depositors by the directors.

The remaining question is, whether the remedy should have been in the form of actions at law, or a suit in equity such as this.

The case, as already stated, appears to us to be one clearly of equitable cognizance. The rule relating to equitable jurisdiction applicable to this case is laid down by Pomeroy as follows: Where a number of persons have separate or individual claims and rights of action against the same party, all arising from some common cause, governed by the same rule, and involving similar facts, so that the whole matter might be settled in a single suit brought by all the persons uniting as co-plaintiffs, or one of the persons suing on behalf of himself and others; or, where one party has a common right against a number of persons, the establishment of which would regularly require a separate action brought by him against each of these persons, instead whereof he might procure the whole to be determined in one suit, a bill in equity will lie on the ground that it prevents a multiplicity of suits. Pomeroy, Equity Juris. (2d Ed.) vol. 1, § 245.

The case stated in the bill goes—in the matter of equitable cognizance—even beyond the rules thus laid down. It is a case not alone of a number of persons having separate and individual claims against one party, arising from a common cause; or one person having rights against a number of persons, arising from a common cause; but the case of a number of persons having each a right against a number of persons, all arising from a common cause. To this, too, must be added the further consideration, that neither of the depositors could, by separate suits at law, recover that to which he is entitled; for the defendants to such suits, being directors who served varying terms, and subject, therefore, to varying obligations, could not be called to complete accounting and apportionment in a suit at law. Our conclusion is that the bill filed is the proper way to obtain an enforcement of whatever rights the depositors individually, or as a class, may have against the directors individually, and as a class. Indeed, both our conclusion on this point of jurisdiction, and on the right of depositors to bring the action directly, without the intervention of the receiver, seems to be sustained, indirectly at least, in Briggs v. Spaulding, 141 U. S. 132, 11 Sup. Ct. 924, 35 L. Ed. 662. There the suit was in equity by a depositor—the First National Bank of Buffalo through its receiver—against the directors, and no question seems to have been made that the suit in that form would not lie. While but four of the Justices were for sustaining the depositor's claim, the other five denied it, not on the

ground that the suit would not lie, but that the claim was not made out by the proofs.

In view of what has already been said, the other points made in support of the decree below lose their point. The bill is not multifarious, because it does not proceed on distinct theories of recovery. The bill may have some surplusage, but it sets forth the obligations of the directors and their breach, with sufficient certainty. And the suit survives against the representatives of deceased directors, because it is a suit on contract, and not in tort. We think, too, under all the circumstances, that appellants ought to have leave to amend with respect to the time when their deposits were made.

The special demurrers taken on the part of certain defendants, that they were not shown to have been directors at the time certain acts complained of were done, cannot be sustained. The bill shows, that during the whole period covered by the complaint, dividends were being paid out of capital stock; and to that extent, at least, all of the defendants named, are answerable to the depositors.

The decree of the Circuit Court will be reversed, and the case remanded with instructions to give appellees leave to file the amendment proposed, and thereupon to overrule the demurrers to the bill.