[No. 26158.  *En Banc.*  July 26, 1937.]

FRANK R. NOBLE, *Appellant,* v. CLARENCE D. MARTIN
*et al., Respondents.*[1]

[1]Reported in 70 P. (2d) 1064.

40

M. S. Hanauer, C. W. Greenough, Hanson & Keane, A. H. Oversmith, and L. D. Keith, for appellant.

Graves, Kizer & Graves, for respondent Martin.

Post, Russell, Davis & Paine, for respondents Johnson et al.

Danson, Lowe & Danson, for respondents Cooper et al.

Don F. Kizer and E. A. Cornelius, for respondents Ahlquist et al.

ROBINSON, J.—In this cause, after the trial court had sustained demurrers interposed on all the statutory grounds to each of the three causes of action pleaded in the third amended complaint, the plaintiff elected to stand on that complaint and refused to plead further.

A judgment of dismissal was entered, and from that judgment this appeal was taken.

Upon opening the oral argument in this court, the appellant's attorney conceded that the demurrers to the second and third causes of action were properly sustained, and, as the filing of the third amended complaint waived any errors which may have been committed in ruling upon the three preceding complaints (*Sunset Motor Co. v. Woodruff*, 130 Wash. 516, 228 Pac. 519; *Goshert v. Wirth*, 130 Wash. 14, 226 Pac. 124; *Port of Seattle v. Fidelity & Deposit Co.*, 185 Wash. 247, 53 P. (2d) 740), it follows that the appeal presents but one question: Did the trial court err in sustaining the demurrers to the first cause of action pleaded in the third amended complaint?

The action grows out of the failure of the American Bank of Spokane, which closed its doors on April 14, 1932, and has since been in the hands of the supervisor of banking. It was brought by Frank R. Noble, as assignee of Nobles, Incorporated, and some eighty other depositors, against eighteen individual defendants, alleged to have been officers and directors of the bank prior to the time it closed. Its purpose is to recover losses alleged to have been suffered by plaintiff's assignors through the failure of the bank, and the action is based upon the ground that the directors and officers permitted the bank to receive their deposits and assented to the receipt thereof, although they knew when the deposits were made that the bank was hopelessly and irretrievably insolvent. The original complaint was filed December 31, 1934.

In his second amended complaint, plaintiff made the supervisor of banking and his assistant in charge of the liquidation parties defendant, upon the allegation that they had wrongfully failed and refused to bring the action. This complaint pleaded an additional cause

of action, alleging various acts of negligence and misfeasance on the part of the directors and officers. Recovery was sought for the benefit of all the creditors of the bank. It was pleaded that it was the intention of the plaintiff to prosecute the suit on behalf of the supervisor and liquidator, "who in truth and in fact are and should be the plaintiffs herein."

The second amended complaint was demurred out of court, but traces of the theory upon which it was based still linger in the first cause of action of the third amended complaint. It is alleged in paragraph twelve thereof that the plaintiff and his assignors were compelled to spend a large sum in preparation and had become obligated to pay the plaintiff's attorneys reasonable compensation, and that these sums constituted a proper charge against any fund which might be recovered. If paragraph twelve be regarded as surplusage, which we think may properly be done, the first cause of action of the third amended complaint is substantially the same as the original action; that is to say, an action to recover against the defendant officers and directors upon the ground that they permitted the bank to receive deposits at a time when they knew it to be hopelessly insolvent.

The plaintiff prayed for recovery in the amount of the aggregate of the sums deposited by his assignors, said amount, however, to be diminished by twenty-seven per cent thereof, which such depositors had received as liquidating dividends prior to the time the complaint was filed.

At common law, the receipt of a deposit by the officers of an insolvent bank did not make such officers personally liable. *Daniels v. Berry*, 148 S. C. 446, 146 S. E. 420; *Forbes v. Mohr*, 69 Kan. 342, 76 Pac. 827; *Hart v. Hanson*, 14 N. D. 570, 105 N. W. 942, 3 L. R. A. (N. S.) 438; *Vroom v. Thompson*, 227 Mo.

App. 531, 55 S: W. (2d) 1024; *Minton v. Stahlman*, 96 Tenn. 98, 34 S. W. 222, 3 R. C. L. (Banks) § 103; Fletcher Cyc. Corporations (Perm. ed.), § 1151.

There are, of course, cases where recovery has been allowed against directors and officers who, by false and fraudulent representations directly made, induced the plaintiff in the case to make a deposit in an insolvent bank or to refrain from withdrawing a deposit already made; that is, where the facts made out a case of ordinary common law fraud. Examples of this class of cases are *Hinson v. Drummond*, 98 Fla. 502, 123 So. 913, and *Ellett v. Newland*, 171 La. 1019, 132 So. 761.

In one of the numerous briefs filed on behalf of the respondents, it is contended that the pleadings in the case at bar do not state sufficient facts to constitute a cause of action on the ground of fraud. We shall not enter into a discussion of that matter. The pleadings do not purport to state such an action, and the appellant clearly stated, at the very beginning of his opening brief, at the beginning of his supplemental brief on reargument, and also in both oral arguments before this court, that the action was brought to enforce a liability created by Art. XII, § 12, of the constitution of the state of Washington. It is certain that the appellant never departed from that position in this court, and if he departed from it in the court below, the record does not show it.

The liability sought to be enforced in this action is created and defined as follows:

"Any president, director, manager, cashier, or other officer of any banking institution who shall receive or assent to the reception of deposits after he shall have full knowledge of the fact that such banking institution is insolvent or in failing circumstances, shall be individually responsible for such deposits so received." (Const. State of Wash., § 12, Art. XII.)

The record does not show, and we are not otherwise advised, upon which ground or grounds the demurrers were sustained. However, we have reached the conclusion that it appears from the face of the complaint that the action was not commenced within the time limited by law.

With respect to the limitation period, the respondents contended that the action is upon a liability created by statute and falls within Rem. Rev. Stat., § 165 [P. C. § 8172], which reads as follows:

"An action for relief not hereinbefore provided for shall be commenced within two years after the cause of action shall have accrued."

The appellant contends that the action is provided for in sections prior to § 165 and may properly be held to fall within subd. 2 of § 157 [P. C. § 8162] or within subds. 2, 3, 4, or 6 of § 159 [P. C. § 8166].

Subdivision 2 of § 157 provides a limitation period of six years for actions "upon a contract in writing, or liability express or implied arising out of a written agreement." Appellant cites the case of *Guaranty Trust Co. v. Scoon,* 144 Wash. 33, 256 Pac. 74, an action brought to enforce the unpaid stock liability created by § 4 of Art. XII of the constitution, and the case of *Bennett v. Thorne,* 36 Wash. 253, 78 Pac. 936, 68 L. R. A. 113, an action brought to enforce the superadded liability created by § 11 of Art. XII, in both of which the limitation provided by subd. 2 of § 157 was held to apply; and contends that, by analogy, this subdivision should also apply to this action, since it is expressly brought to enforce the liability created by § 12 of the same article. We quote from the case first cited:

"Contrary to appellants' contention, the six-year statute of limitation applies in this case. While it is true the state constitution, Art. 12, § 4, provides for the liability of stockholders in this kind of a corporation

for the debts of the corporation to the amount of their unpaid stock and no more, the liability against these appellants sought to be enforced in this action is not a statutory one, as defined in the two-year statute of limitations, but arises from their subscriptions for the stock of the corporation. Their subscriptions were made, it is true, with reference to the provisions of the constitution then in force, the terms of which became a part of their contracts or subscriptions for the capital stock. *Thomas v. Kalbfus,* 97 Ohio St. 232, 119 N. E. 412. But the cause of action is on the subscription contract."

It thus definitely appears that that action was upon a contract in writing, the subscription contract. Since subd. 2 of § 157 can never apply to an action unless there is a written contract between the parties, it follows that the court, in *Bennett v. Thorne,* must also have regarded that action as brought on the subscription contract, or some other agreement in writing. The application of the six-year statute in that case can be accounted for on no other theory.

The case at bar is not an action upon "a contract in writing," or upon an implied liability "arising out of a written agreement." The appellant's assignors entered into contracts with the bank when they made their deposits, but it must be kept in mind that this is not a suit against the bank but against its officers. It is neither pleaded nor pretended that the appellant's assignors entered into written contracts with the respondent officers. It follows that subd. 2, § 157, cannot possibly apply to this action.

The suggestion that the action falls within subd. 2 of § 159 is equally untenable. This subdivision provides as follows:

"An action for taking, detaining, or injuring personal property, including an action for the specific recovery thereof, or for any other injury to the

person or rights of another not hereinafter enumerated; . . ."

It was clearly and definitely held in *Northern Grain & Warehouse Co. v. Holst*, 95 Wash. 312, 163 Pac. 775, that this statutory subdivision applies only to certain direct invasions of personal or property rights. Approval of that decision was later expressed in *Constable v. Duke*, 144 Wash. 263, 257 Pac. 637, and it must be regarded as stating the settled law of the state.

■ The appellant's contention that this action may be properly classified as falling under subd. 4 of § 159 may also be disposed of by citation of authority. The subdivision reads as follows:

"An action for relief upon the ground of fraud, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud; . . . "

That this is not an action for relief upon the ground of fraud is amply demonstrated by a long line of decided cases, of which illustrative examples are *Wagner v. Law*, 3 Wash. 500, 28 Pac. 1109, 29 Pac. 927, 28 Am. St. 56, 15 L. R. A. 784; *Cornell v. Edsen*, 78 Wash. 662, 139 Pac. 602; *Thomas v. Richter*, 88 Wash. 451, 153 Pac. 333; *Hutchinson Realty Co. v. Hutchinson*, 136 Wash. 184, 239 Pac. 388; and *Constable v. Duke, supra*. This line of decisions must also be regarded as stating the settled law of the state as to the interpretation of subd. 4 of § 159.

■ The appellant makes his principal argument in support of the contention that the action falls within subd. 3 of § 159. This subdivision provides as follows:

"An action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument; . . ."

Although it has frequently been contended that the word "liability" in this subdivision should be construed in a broad sense, it is firmly established that the subdivision covers contractual liability only. *Suter v. Wenatchee Water Power Co.,* 35 Wash. 1, 76 Pac. 298, 102 Am. St. 881; *Northern Grain & Warehouse Co. v. Holst, supra; Robinson v. Lewis County,* 141 Wash. 642, 252 Pac. 143, 256 Pac. 503; *Armstrong v. McAdams,* 46 F. (2d) 931; *McClaine v. Rankin,* 197 U. S. 154, 25 S. Ct. 410, 49 L. ed. 702.

The appellant earnestly contends that the liability sought to be enforced in this action is, in fact, contractual in its nature; that is to say, that this is an action for the recovery of damages for breach of implied contracts. He cites the following cases: *Hughes v. Reed* (C. C. A.), 46 F. (2d) 435; *Union Market Nat. Bank v. Gardiner,* 276 Mass. 490, 177 N. E. 682, 79 A. L. R. 1512; *McNeill v. Pace,* 69 Fla. 349, 68 So. 177; *Boyd v. Schneider* (C. C. A.), 131 Fed. 223; *McDonald v. Mueller,* 123 Ark. 226, 183 S. W. 751; *Parks Shellac Co. v. Harris,* 237 Mass. 312, 129 N. E. 617; *Bates v. Dresser,* 229 Fed. 772; *Weston v. Dahl,* 162 Wis. 32, 155 N. W. 949, Ann. Cas. 1918C, 922; *Robertson v. Davis,* 169 Tenn. 659, 90 S. W. (2d) 746; *Jacobs v. Seattle,* 100 Wash. 524, 171 Pac. 662; *Marshall v. Whatcom County,* 143 Wash. 506, 255 Pac. 654, and a number of other cases of the same general description, none of which are claimed or represented to be directly in point, but are said to be persuasive by analogy. Appellant says, however:

"But we need not content ourselves with cases based upon different though analogous statutes. The state of Texas has a statute very similar to our constitutional provision. In *Rose v. First State Bank of Paris,* 122 Tex. 298, 59 S. W. (2d) 810, which was an action brought by a depositor to recover deposits made after insolvency under a statute similar to our constitutional

provision, the court held the obligation of the directors to be a *debt* created by statute."

We think counsel for appellant have misinterpreted the opinion in that case, probably by indulging in the natural assumption that a debt is necessarily a contractual liability. Noyes and other officers of the bank were parties defendant, and recovery was sought against them on the ground that they had assented to deposits at a time when they knew that the bank was insolvent, in violation of a statute almost identical in its language with the constitutional provision upon which this action is based. It was held that the action against the defendant officers fell under a limitation provision covering actions for debt. But, under the Texas law, a debt is not necessarily contractual. We quote the following excerpts from the opinion:

"It is the settled law of this State that the phrase 'Actions for debt' as used in our limitation statutes is not the common law *action for debt* in its strict literal interpretation, 'for we have no actions which come strictly and technically within that denomination.' *Robinson v. Varnell*, 16 Texas, 382; *Gordon v. Rhodes & Daniel*, 102 Texas, 300;" [and other cases.]

"In the early case of *Robinson v. Varnell*, *supra*, our Supreme Court, speaking through Judge Wheeler, announced the rule of interpretation stated by us above. In the later case of *Gordon v. Rhodes & Daniel*, *supra*, our Supreme Court, speaking through Judge Williams, re-affirmed the rule in *Robinson v. Varnell*, and used the following very significant language:

" 'It follows that if a cause of action be for a debt, in the sense of this statute, the debt need not be evidenced by or founded upon contract at all to come within the two years statute.' "

As we read the opinion, it is not only not an authority for the appellant's contention that the liability sued upon in the case at bar is contractual, but is, in fact, a direct authority in support of respondents'

position that it is a liability created by statute, for, after quoting the statute, the court says:

"A reading of the above statute convinces us that its purpose and effect is to create a personal *statutory liability* on the part of officers and directors of State banks, who accept deposits for the bank or create debts on its part, at a time when they have knowledge that such bank is insolvent or in a failing condition. When Rose made his deposit, and received the certificate of the bank evidencing the same, the bank's liability to him rested on a contract. Not so as to the liability of the officers and directors of the bank. That liability rested on the fact that the statute made them personally liable because they accepted the deposit for the bank at a time when they knew it was insolvent or in failing condition. *In other words, the liability of Noyes et al., was created purely by the statute."* (Italics ours.)

In citing authority in support of his argument by analogy, appellant is equally unfortunate in so strongly stressing the case of *Hughes v. Reed* (C. C. A.), 46 F. (2d) 435. From this opinion, the appellant quoted at great length in his briefs and, in part, as follows:

"While the amended bill does not clearly disclose the theory of the pleader, the facts alleged are sufficient to support an action upon the implied contract. The assumption of the duties of directorship in any corporation is an agreement honestly and diligently to direct the business of the corporation. The statute requires that each director of a national bank take an oath that he will, 'so far as the duty devolves on him, diligently and honestly administer the affairs of such association, and will not knowingly violate or willingly permit to be violated any of the provisions of this title.' 12 USCA § 73. By the relationship, fortified by the oath, he agrees with the stockholders and creditors that he will honestly and diligently administer the bank's affairs. The amended bill alleges facts which, if true, are a breach of that agreement. It has been

expressly held that the liability of a director is ex contractu." (Citing cases from a number of jurisdictions.)

But there was another liability asserted against the defendant directors in *Hughes v. Reed,* a liability founded upon a violation of a statute, which the court quoted as follows:

" 'If the directors of any national banking association shall knowingly violate, or knowingly permit any of the officers, agents, or servants of the association to violate any of the provisions of this chapter, all the rights, privileges, and franchises of the association shall be thereby forfeited. \* \* \* And in cases of such violation, every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which *the association, its shareholders, or any other person,* shall have sustained in consequence of such violation.' "

The court then proceeded to discuss the nature of the liability:

"Is this a 'liability created by statute?' On the face of it, it appears to be. The duty (to abstain from loans in excess of 10 per cent.) is fixed by statute; the statute likewise fixes the remedy—the forfeiture of the franchise, and personal liability of the directors, provided the directors 'knowingly' violate or permit a violation, and 'participate in or assent to' such violation. Appellees argue that a duty exists at common law to abstain from lending any considerable part of the capital and surplus to one concern, to avoid putting too many of the bank's eggs in one basket; that the statute merely measures or defines that duty, and does not create it. The common-law obligation is to be honest and diligent; a loan of 20 per cent. of the capital and surplus to a great railroad might be consistent with honesty and fidelity; a loan of one per cent. to another customer might not be. Aside from statute, there is no prohibition of loans in any fixed percentage. *The prohibition is purely statutory; the breach thereof is*

*therefore a 'liability created by statute.' "* (Italics ours.)

If that court had had before it the liability in the case at bar, it would undoubtedly have classified it as "a liability created by statute." The parallel is practically perfect. In the case at bar, the duty (to abstain from receiving deposits) is fixed by statute (or, more accurately speaking, by the constitution, which is the same thing); the statute likewise fixes the remedy, personal liability of the directors, provided the directors knowingly violate or permit a violation or assent to such violation. Aside from statute, there is no prohibition against merely assenting to the receipt of deposits while insolvent. The prohibition is purely statutory. The breach thereof is, therefore, "a liability created by statute." .

As to the first liability dealt with in that opinion, that is, the liability based upon the negligence of directors, it will perhaps be sufficient to point out that the holding that such an action is based upon an implied contract is contra to our own decisions, as are the cases of *Boyd v. Schneider* and *Bates v. Dresser, supra,* upon which appellant also strongly relies. As late as August last, we held, in *Grussemeyer v. Harper,* 187 Wash. 508, 60 P. (2d) 702, that an action against directors to recover damages based on negligence in administering the affairs of the corporation falls under Rem. Rev. Stat., § 165. Had it been held to be an action upon an implied contract, it would necessarily have been assigned to subd. 3, § 159.

It has not been the policy of this court to imply a contract where the gravamen of the action is a negligent or tortious act, as may be seen from a discussion of the matter in *Northern Grain & Warehouse Co. v. Holst,* 95 Wash. 312, 163 Pac. 775; nor do we think that the tendency to convert liabilities arising out of

the nonfeasances or misfeasances of corporate directors into contractual liabilities, through the fictional process of implication, is as strong and wide-spread as appellant contends.

In *Smith v. Fischer*, 58 S. D. 510, 237 N. W. 718, 77 A. L. R. 524, an action was brought under Code § 8990 upon a liability described as follows:

" 'Every officer and director of any bank shall be held personally liable for all excessive loans made by his bank, in such amount as such loan may be in excess of the amount limited by law.' "

The court held that the action fell within the code provision "an action upon a liability created by statute other than a penalty or forfeiture," and, in explanation of that holding, said:

"In holding, as we do, that the liability of the directors under section 8990 is purely statutory, we are aware that we are in conflict with what is said in *Ranchman's State Bank v. Lenning*, 53 S. D. 250, 220 N. W. 485, where, by a divided court, we held that the liability imposed by section 8990 is contractual in nature and falls within the provisions of section 3389, Rev. Code 1919, which forever bars all 'claims arising upon contract,' unless presented within the time fixed by section 3387, Rev. Code 1919. We are satisfied that we were wrong in our holding in that case. The idea that the liability created by section 8990 is contractual, is based upon the theory that by accepting the position of director or officer of a bank such director or officer impliedly agrees to pay to the bank or the bank's creditors all excess loans made by the bank, regardless of whether he participated in the making of such loans or had knowledge of the making thereof. This we believe is carrying the doctrine of implied contract beyond reasonable bounds, and hereby expressly overrule what is said in the *Ranchman's Bank* Case."

We have dealt rather minutely with the case principally relied on by appellant on this phase of the case. It is impossible to do that with all the cases cited. It

may be briefly noted in passing that the Massachusetts case, *Union Market Nat. Bank v. Gardiner, supra,* is of little value, since at one place it speaks of the liability therein dealt with as "contractual" and in another as "wholly the creature of the statute." The Tennessee case, *Robertson v. Davis, supra,* also contains expressions which may be aptly quoted to sustain either side of the controversy, while the Florida case, *McNeill v. Pace, supra,* is a suit to recover superadded liability brought, as the opinion states, upon a written subscription contract and, therefore, as we have hitherto shown, not at all in point.

The case of *Jacobs v. Seattle,* 100 Wash. 524, 171 Pac. 662, holds that, when a city takes property without compensation, not tortiously but under a claim of right under its power of eminent domain, an action subsequently brought for compensation is an action on an implied contract. Hence, the appellant says an action on a liability created by the constitution is contractual. But the right to recover just compensation for property taken is not created by the constitution. It always existed and is, by the constitutional provision (§ 16, Art. I), merely confirmed and guaranteed against legislative impairment.

In the case at bar, there is no privity of contract between the appellant's assignors and the respondents. The appellant's assignors, in making their deposits, contracted with the bank, not with its officers. Section 12 of Art. XII provides that, if the directors and officers of a banking corporation do thus and so, they shall be liable to its depositors. The liability does not arise out of a contract, but out of conduct.

In *Mallon v. Hyde,* 76 Fed. 388, the only reported case in which this provision of our constitution has been construed, Judge Hanford said, with regard to the liability thereby created:

"It is for the benefit of those particular depositors whose money is taken under such circumstances as to constitute a fraud. *The injury done by the fraudulent conduct of the bank officials is the basis of liability,* . . ." (Italics ours.)

In the decisions of other jurisdictions, the liability is almost uniformly spoken of as tortious in its nature and akin to fraud. Zollman—Banks and Banking (Perm. ed.), § 2004. On account of that relationship and resemblance, an action to enforce it has been said to be "analogous to the well-known action on the case at common law." *Paris v. Beckner,* 143 Okla. 238, 289 Pac. 276.

In a suit brought to enforce the liability created by § 12 of Art. XIV of the constitution of Arizona, which section is in the exact language of our § 12 of Art. XII, the supreme court of Arizona said, "It is not pretended that any relief sought here grows out of contract," and held that the action was based upon a liability created by statute, "or," said the court, "what is the same thing, a constitutional provision." *Long v. Schutz,* 26 Ariz. 432, 226 Pac. 529. We have already seen that it was classified as a "liability created by statute" in *Rose v. First State Bank,* 122 Tex. 298, 59 S. W. (2d) 810, and additional instances where it is so classified will be noted later in this opinion.

Finally, on this phase of the matter: Although the liability sued upon has for many years been imposed upon officers and directors of banks by the statutes or constitutions of ten or more states, and there are many decisions construing these statutes and constitutional provisions, counsel for appellant have cited no decision holding the liability to be contractual, nor have we been able to find such a decision, although our independent research has been thorough and exhaustive.

In our opinion, the liability sued upon is so far tortious in its nature that we regard the appellant's

suggestion that the action may fall under subd. 6 of § 159 as presenting the most difficult question in the case. This subdivision, in so far as it is material to the inquiry, reads as follows:

"An action upon a statute for a penalty or forfeiture, where an action is given to the party aggrieved, . . ."

This point, unfortunately, is scarcely mentioned in the briefs and was not dealt with by counsel on oral argument. We ascribe this not to any lack of diligence on the part of counsel but to the following circumstances: The action is wholly upon assigned claims, In support of their second ground of demurrer challenging the appellant's capacity to maintain the action, the respondents contended that the claims were for the recovery of penalties and, therefore, not assignable. This contention was so vigorously pressed that the appellant was compelled to use every available resource to combat it. When the seventh ground of demurrer was reached, the respondents could not very gracefully contend that, after all, the claims were not for the recovery of penalties, while the appellant, on the other hand, could not, with safety, weaken his argument against the second ground of demurrer by contending that they were. The appellant's dilemma, however, is perhaps not as serious as respondents would have it appear.

In at least one jurisdiction, it is held that the liability is not so far penal as to prevent the assignment of an action to enforce it, yet sufficiently penal as to be regarded as a penalty within the meaning of its statute of limitations. This was held in a case decided in the Kansas City court of appeals as recently as 1932, *Vroom v. Thompson,* 227 Mo. App. 531, 55 S. W. (2d) 1024, following a number of Missouri decisions, some of them by the supreme court of that state. The decision,

however, is based partly upon the wording of the constitutional provision which begins, "It shall be a crime . . . ," and partly upon the doctrine of stare decisis. After alluding to the fact that the rule differs in other states, the court said, in part:

"As heretofore intimated, no matter how the courts of other states may consider such statutes, under a constitutional provision giving a cause of action where none existed at common law, and where no relation between the parties can be implied as forming the basis of such right, but in which the liability created by the statute is made to follow the *intentional* doing of a *wrongful* act, the courts of our state have, from the adoption of this constitutional provision and the original passage of said sections 11763 and 11764, Revised Statutes of Missouri 1919, uniformly treated and declared actions thereunder to be actions for a penalty."

There is a dictum in the case of *Credit Men's Adjustment Co. v. Vickery,* 62 Colo. 214, 161 Pac. 297, which supports the view taken in *Vroom v. Thompson,* but much that is said in the opinion points in the opposite direction, since it is clearly held that the action against the directors is remedial and the recovery compensatory only.

The appellant is also entitled to the benefit of such analogies as may be drawn from our own decision in *Thomas v. Richter,* 88 Wash. 451, 153 Pac. 333. In that case, a suit was brought by a trustee in bankruptcy against the trustee of a corporation to recover the amount of unlawful diminution of the capital stock under Rem. & Bal. Code, § 3697, making it unlawful to reduce or divide the capital stock and providing that the trustees shall be personally liable to the creditors for the full amount of such reduction or division. As to this action, the court held:

"It is both remedial and penal, and we think is referable rather to the sixth subdivision of the statute than to the fourth."

That the question submitted to the court by the appeal was not what statute applied, but whether the action fell under subd. 4 or 6 of § 159, is clearly shown by the following excerpt from the opinion:

"In this court no question was made as to the sufficiency of the complaint, the sole question discussed being whether the action was commenced within the time limited by law. The parties are agreed that the controlling section on this question is § 159 of Rem. & Bal. Code, which limits the time within which actions may be commenced for the causes therein mentioned to three years; they do not agree, however, as to which of the particular subdivisions of the statute the action is referable."

If the statute involved in *Thomas v. Richter* be construed as authorizing the corporation to recover from the directors the full amount withdrawn and divided, rather than the amount of damages suffered, the liabililty is, in fact, penal within the ordinarily accepted rules. Such a construction is plausible, and perhaps necessary, since the statute says that, in case it is violated, the directors participating in its violation shall be jointly or severally liable to the corporation and the creditors thereof "to the full amount so divided or reduced or paid out."

So construed, the liability is rightly held to be penal within the rule laid down by the supreme court of the United States in *Huntington v. Attrill*, 146 U. S. 657, 13 S. Ct. 224, 36 L. ed. 1123. The case itself is not directly in point, as the exact question decided was whether or not a New York statute, creating a liability against directors of corporations failing to file reports, was so far penal that it could not be enforced in a foreign state or country. The opinion, however, con-

tains a statement which has become the generally accepted test in determining whether or not a statute creates a penal liability.

"As the statute imposes a burdensome liability on the officers for their wrongful act, it may well be considered penal, in the sense that it should be strictly construed. But as it gives a civil remedy, at the private suit of the creditor only, and measured by the amount of his debt, it is as to him clearly remedial. To maintain such a suit is not to administer a punishment imposed upon an offender against the State, but simply to enforce a private right secured under its laws to an individual."

The second sentence in the above quotation describes the remedy which the appellant here is actually pursuing. He is attempting to enforce a civil remedy measured not by the amount of his assignors' deposits but by the amount of their actual loss, for, as has been seen, he seeks to recover the amount of their deposits "less 27% thereof," which his assignors had received as liquidating dividends. This was the prayer of the third amended complaint and of all three previous complaints.

We think the decision of the supreme court of Kansas in the case of *Frame v. Ashley,* 59 Kan. 477, 53 Pac. 474, which is directly in point, is sound in reason and in accord with the weight of authority. The suit was brought to enforce a liability of the same kind here sued upon and created by a statute in which the liability is described in the exact words of our constitutional provision, "shall be individually responsible for such deposits so received." The court said, in part:

"The sole question for decision is this: Is the action upon a 'liability created by statute'; or, is it 'upon a statute for penalty or forfeiture'? Does the limitation provided by the second subdivision of section 12 of the Civil Code, General Statutes 1897, or, as formerly

numbered section 18, apply; or, does that of the fourth subdivision of the section apply?

"We are quite clear that the action is 'upon a liability created by statute,' and that the limitation of three years governs. The Court of Appeals was therefore in error. The general rule is that a statutory obligation to pay damages which the common law does not give is 'a liabililty created by statute,' where the damages awarded are limited to compensation—limited to an amount which merely makes the injured person whole. The general rule also is that a statutory obligation to pay an amount beyond compensation, to submit to more than the simple redress of the wrong done, to pay not merely in respect of the deserts of the injured person but as punishment for the wrong done, is a penalty. Tested by these simple rules the case is easy of solution. The statutory obligation in question is a liability created by statute, because it is wholly limited to compensation. There is nothing of a penal character in the terms of the law which imposes the obligation. On the contrary, the statute and other enactments in *pari materia* clearly show that it was intended to be compensatory and not penal. Its title is as follows: 'An act making officers of banking institutions responsible for the reception of deposits or the creation of debts, when such bank is insolvent or in a failing condition.' After declaring that the reception of deposits or the creation of debts by banking officers with knowledge of the actual or impending insolvency of the bank shall be unlawful, it further declares: 'Every person violating the provisions of this section shall be individually responsible for such deposits so received and all such debts so contracted.' Nothing is allowed by it beyond the actual loss sustained."

See *Olesen v. Retzlaff*, 184 Minn. 624, 238 N. W. 12, 239 N. W. 672, 78 A. L. R. 891, pointing out that former Minnesota decisions, holding suits against directors for permitting banks to receive deposits while insolvent were penal in nature within the meaning of the statute of limitations, have been overruled, and *Cowden v. Williams*, 32 Ariz. 407, 259 Pac. 670, 55 A. L. R. 1059,

holding that actions to enforce such a liability fall within the limitation, "An action upon a liability created by statute other than a penalty or forfeiture." See also *Smith v. Fischer*, 58 S. D. 510, 237 N. W. 718, 77 A. L. R. 524, and *Pourroy v. Gardner*, 122 Cal. App. 521, 10 P. (2d) 815, cases not directly in point but persuasive by analogy.

We hold that the liability created by § 12 of Art. XII of the constitution, in favor of the depositors against the officers and directors of banks, is not penal but remedial; or, in other words, that this action is not an action to enforce a penalty but to collect compensatory damages, and we are the more content to so hold because of the existence in our law of criminal statutes dealing with the matter found in Rem. Rev. Stat., §§ 2640, 3288 [P. C. §§ 8897, 331]. Section 2640 is as follows:

"Every owner, officer, stockholder, agent or employee of any person, firm, corporation or association engaged, wholly or in part, in the business of banking or receiving money or negotiable paper or securities on deposit or in trust, who shall accept or receive, with or without interest, any deposit, or who shall consent thereto or connive thereat, when he knows or has good reason to believe that such person, firm, corporation or association is unsafe or insolvent, shall be punished by imprisonment in the state penitentiary, for not more than ten years, or by a fine of not more than ten thousand dollars."

■ Thus far, the inquiry has been entirely in the nature of a process of elimination. There are affirmative reasons why this action must be held to fall under § 165. As we have seen, the authorities uniformly hold that the liability sought to be enforced is a "liability created by statute," or "a statutory liability," or "an obligation in the nature of a specialty." Under what limitation provision of our statute do actions brought to enforce such liabilities fall?

In the limitation statutes of many states, actions on such liabilities are included in a special section. The Iowa statute, like ours, begins with a general provision to the effect that actions can only be brought within the times thereinafter prescribed. This provision, as in our own system, is followed by a series of sections pertaining to actions on certain designated liabilities, but containing no section specifically covering actions created by statute. There is, however, a "catch-all" provision similar to our § 165. In a recent case, *George v. Webster County*, 211 Iowa 164, 233 N. W. 49, in which it was contended that, " 'since there is no statutory limitation as to specialities in Iowa, the common-law rule applies,' " and actions on statutory liabilities can only be barred at the expiration of twenty years, the supreme court of Iowa held that such actions fall within the catch-all provision. That exact contention was made in this court thirty-five years earlier and was answered in the same way. *Spokane v. Stevens*, 12 Wash. 667, 42 Pac. 123. We quote from the later case of *Douglas County v. Grant County*, 98 Wash. 355, 167 Pac. 928, to the same effect:

"While the point is not presented in the brief of counsel, it was suggested in the argument at bar that the statute of limitations was without application. The suggestion is founded in the fact that the action is upon an obligation in the nature of a specialty, that is, one created by a special enactment of the legislature, and while the statute limiting the time within which actions may be commenced enumerates various causes of action, it does not include within the enumeration actions of this sort. But the suggestion overlooks the general provision contained in § 165. That section follows the specific enumeration and provides:

" 'An action for relief not hereinbefore provided for shall be commenced within two years after the cause of action shall have accrued.'

"This section was quoted by the late Judge Dunbar in the case of *Citizens' Nat. Bank of Crawfordsville v.*

*Lucas,* 26 Wash. 417, 67 Pac. 252, 90 Am. St. 748, 56 L. R. A. 812, with the comment that the legislature intended thereby 'to provide a limitation for every kind of action that could be brought in the courts.' Prior thereto we had held that an action to foreclose a lien created by a special assessment for a public improvement was barred unless the action was brought within two years after the cause of action accrued. *Spokane v. Stevens,* 12 Wash. 667, 42 Pac. 123; *Ballard v. West Coast Imp. Co.,* 15 Wash. 572, 46 Pac. 1055; *Bowman v. Colfax,* 17 Wash. 344, 49 Pac. 551; *Seattle v. DeWolfe,* 17 Wash. 349, 49 Pac. 553.

"Obligations of the nature here considered are the creatures of statute, and are as much specialities as in the obligation at bar. Clearly, therefore, a statute that will bar the one will bar the other."

This decision, the decisions therein cited, and the still later decision in *Robinson v. Lewis County,* 141 Wash. 642, 252 Pac. 143, 256 Pac. 503, firmly establish the rule in this state that, under our system of limitations, actions to enforce a liability created by statute, other than actions for penalties or forfeitures, fall within Rem. Rev. Stat., § 165. This construction has been given to our limitation statutes and our decisions relating thereto by other courts, including the supreme court of the United States.

When an action is brought to enforce the superadded liability of stockholders in national banks, the statute of limitations of the forum applies. In such an action, *McClaine v. Rankin,* 197 U. S. 154, 25 S. Ct. 410, 49 L. ed. 702, brought by the receiver of the First National Bank of South Bend, Washington, the court of appeals, through the process of implication, held that the liability was contractual and governed by subd. 3 of Bal. Code, § 4800, now subd. 3 of Rem. Rev. Stat., § 159. The supreme court, however, held on appeal that the action was brought to enforce "a liability created by

statute," and, after discussing our limitation statutes and our decisions thereon, held that the action must fall under Bal. Code, § 4805, now Rem. Rev. Stat., § 165. The court said, at page 161 (official ed.), that, under the Washington law, the limitation imposed on an action upon a statute for penalty or forfeiture is three years, "and on any other action to enforce a statutory liability two years because not otherwise provided for."

In 1931, the eighth circuit court of appeals, in a similar case, *Armstrong v. McAdams,* 46 F. (2d) 931, wherein the statute of limitations of Arkansas was applicable, held, following *McClaine v. Rankin, supra,* that an action brought to enforce superadded liability was an action on a liability created by statute and said:

"It will be noted that the Washington statute upon which the McClaine case is based and the statute of Arkansas under consideration are similar for all practical purposes, . . ."

It thereupon held that the action fell under the following limitation statute:

" 'All actions not included in the foregoing provisions shall be commenced within five years after the cause of action shall have accrued.' "

Finally, we call attention to the case of *Constable v. Duke,* 144 Wash. 263, 257 Pac. 637. The defendant, Duke, as supervisor of banking, was charged with the duty of closing banks as soon as periodic examinations disclosed that they were insolvent, and it was pleaded that, to the plaintiff's damage, he permitted an insolvent bank to remain open and receive deposits long after he knew, or should have known, that it was insolvent. It was held, following *Northern Grain & Warehouse Co. v. Holst,* 95 Wash. 312, 163 Pac. 775, that the action as to limitation was not governed by subds. 3 or 4 of § 159, as contended by plaintiff, but by

§ 165.   The neglect of duty alleged in the case at bar is the same as the neglect of duty alleged in *Constable v. Duke,* and the consequential damages were of the same kind and incurred in the same manner.   The only difference between the cases is that, in this case, the defendant-respondents are officers of a private corporation, while, in that case, the defendant was a public officer.   That difference does not seem sufficiently substantial to warrant a distinction between the cases, and especially so when we consider the following excerpt from the opinion of Judge Morris in the case of *Northern Grain & Warehouse Co. v. Holst:*

   "An action against a public official because of his negligence in the performance of public duty is no more an action upon a contract or liability, express or implied, than is an action against a private person based upon negligence in the discharge of private duties."

We hold that the action in the case at bar is governed by the two-year limitation provided by Rem. Rev. Stat., § 165.

   Although it is doubtful whether an action on a liability of the kind sued upon accrues at the time the deposit is made, as is held by some authorities, we think there can be no doubt that it must be held to have fully accrued at the time the bank is closed on account of insolvency.   The appellant seems to have so thought, for he prays for interest from the date the bank was closed, April 14, 1932.

As the complaint in this cause alleges that the bank was closed on account of insolvency on April 14, 1932, and the original complaint was not filed until December 31, 1934, the action was not begun within the two-year limitation period prescribed by Rem. Rev. Stat., § 165, and the respondents' demurrers were properly sustained on that ground.   Having come to this conclu-

sion, it is unnecessary to discuss the other grounds of demurrer.

The judgment appealed from is affirmed.

STEINERT, C. J., HOLCOMB, BEALS, and TOLMAN, JJ., concur.

BLAKE, J. (dissenting)—In determining the applicability of the statute of limitations, the nature of the right sued upon, rather than the form of the action, is controlling. *Union Tool Co. v. Farmers & Merchants Nat. Bank,* 192 Cal. 40, 218 Pac. 424, 28 A. L. R. 1417. And where a complaint discloses both a cause of action arising out of implied contract and in tort, the plaintiff will be permitted to recover on the implied contract, even though the remedy in tort is barred by the statute of limitations. *Cockrill v. Cooper,* 86 Fed. 7; *Ivey's Adm'r v. Owens,* 28 Ala. 641. See also: *Holmquist v. Gilbert,* 41 Colo. 113, 92 Pac. 232, 14 L. R. A. (N. S.) 479; *Falk v. Fulton,* 124 Kan. 745, 262 Pac. 1025. When there is any doubt as to which of two statutes of limitation is applicable, the longer period will be applied. *Matthys v. Donelson,* 179 Iowa 1111, 160 N. W. 944; *St. Louis etc. R. Co. v. Sweet,* 63 Ark. 563, 40 S. W. 463; *Multnomah County v. Kelly,* 37 Ore. 1, 60 Pac. 202; *Hughes v. Reed,* 46 F. (2d) 435; *Crawford County Trust & Sav. Bank v. Crawford County,* 66 F. (2d) 971. See also: *Holmquist v. Gilbert, supra.* And this court, in *Hein v. Forney,* 164 Wash. 309, 2 P. (2d) 741, 78 A. L. R. 631, said:

"The statute of limitations, although not an unconscionable defense, is not such a meritorious defense that either the law or the fact should be strained in aid of it." (Citing *Paul v. Kohler & Chase,* 82 Wash. 257, 144 Pac. 64.)

Applying these rules to the cause of action here set up, it seems clear to me that the case falls within the

three-year statute of limitations. Rem. Rev. Stat., § 159.

While the cause of action set up in the complaint is predicated wholly upon the constitutional liability imposed by § 12, Art. XII, of the state constitution, it is held, by the clear weight of authority, that the obligation of the directors, under statutes to the same purport, arises *ex contractu. Union Market Nat. Bank v. Gardiner,* 276 Mass. 490, 177 N. E. 682, 79 A. L. R. 1512; *Orth v. Mehlhouse,* 36 F. (2d) 367; *Benton v. Deininger,* 21 F. (2d) 659; *Curtis v. Phelps,* 208 Fed. 577; *Boyd v. Schneider,* 131 Fed. 223; *Bates v. Dresser,* 229 Fed. 772. The question in these cases was whether the liability imposed by statutes imposing personal liability survived after death of the director. In the case last cited, the rule was summed up in the following language:

"The ground upon which these cases seem to proceed is that the directors of a national bank, in entering upon their duties as such officers, impliedly agree to properly and faithfully perform them, and if by misconduct or negligence they fail in this respect, and damage ensues, a cause of action arises . . . that the cause of action is *ex contractu,* rather than *ex delicto,* and, because of this, survives."

And in *Boyd v. Schneider, supra,* Judge Grosscup, speaking for the seventh circuit court of appeals, said:

"And the suit survives against the representatives of deceased directors, because it is a suit on contract, and not in tort."

Since, under the rule of these decisions, this case is "an action upon a contract *or liability,* express or implied," it clearly falls within Rem. Rev. Stat., § 159, subd. 3, fixing the period of limitation at three years. If the liability arises out of a *written agreement,* a view for which, as we shall see, there is some authority, then the six-year statute (Rem. Rev. Stat., § 157) is

applicable. *Hughes v. Reed,* 46 F. (2d) 435; *Union Market Nat. Bank v. Gardiner, supra.* In the case last cited, Chief Justice Rugg, construing a statute imposing personal liability upon officers for debts of the corporation, said:

"With respect to a claim of this character it was held in *Nickerson v. Wheeler,* 118 Mass. 295, that the liability was imposed by statute and should be construed with reference to the statute, that officers of a corporation by accepting their positions impliedly agreed to conform to the requirements of the statutes in making returns and that provisions for the benefit of creditors for failure in this respect have been construed as remedial; and it was said at pages 298—299: 'The mode provided by law for the enforcement of the liability of the officers is in the nature of a suit upon a contract. . . . In substance, the remedy provided is also in contract. The officers are not held to compensate a creditor only for the injury which he has sustained, which would be their liability in an action of tort. They are treated as assuming the responsibility of the contract made by him with the corporation. . . .' . . . *The statute of limitations as to contracts applies to liability of this nature.*" (Italics mine.)

And with this rule, our own case of *Bennett v. Thorne,* 36 Wash. 253, 78 Pac. 936, 68 L. R. A. 113, is in perfect harmony. To my mind, by analogy, that case is controlling authority for decision of the instant case, both as to the character of the cause of action and as to the applicable statute of limitations. The only difference between the two cases is that in the *Bennett* case it was sought to hold the stockholders for superadded liability imposed by § 11, Art. XII, of the state constitution, while in the case at bar it is sought to hold the directors for liability imposed by § 12 of that article. The basis of liability is exactly the same in both cases. In the *Bennett* case, the court said:

"The action against the stockholders accrued when the bank became insolvent, and should have been enforced within *six years* thereafter." (Italics mine.)

The whole argument from which that conclusion was reached was predicated on the theory that the liability arose *ex contractu*. The authority of the *Bennett* case, however, is swept aside by the majority, with the observation:

"It follows that the court *must also have regarded that action as brought on the subscription contract, or some other agreement in writing.*" (Italics mine.)

I find nothing in the opinion that warrants such assumption. On the other hand, I find in the complaint in that case allegations which directly refute it:

"That by the *constitution and laws* of the state of Washington, the stockholders of said banking corporation are held individually responsible . . . for all contracts, debts and engagements of said corporation, accruing *while they remain such stockholders* to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares . . .
"WHEREFORE, . . . petitioner prays that the court . . . determine the amount of the *individual statutory liability of the stockholders* . . ., such amount to be fixed and determined in accordance with the *constitution and laws* of the state of Washington; that the court thereupon make an order, assessing the stockholders . . . upon the individual and statutory liability in accordance with said constitution and laws . . . for all contracts, debts and engagements of said corporation, accruing while they have remained such stockholders . . ."

The decree entered levied an assessment against the stockholders "who were such at the time the debts . . . accrued . . . on their statutory liability as such stockholders." Nowhere in the record is it suggested that the liability was predicated on subscription

agreèment, or any other writing than that imposed by § 11, Art. XII, of the constitution.

Plainly, the liability imposed by § 11, Art. XII, is not based upon any subscription agreement. The section itself makes this clear:

"Each stockholder . . . shall be . . . liable . . . for all contracts, debts and engagements . . . *accruing while they remain such stockholders,* . . ." (Italics mine.)

In other words, liability attaches to any stockholder who comes within the terms of the provision, without regard to the signing of a subscription agreement. *Shuey v. Holmes,* 21 Wash. 223, 57 Pac. 818; *Shuey v. Adair,* 24 Wash. 378, 64 Pac. 536. So it may well be argued that the *Bennett* case is authority for holding that the case at bar falls within the six-year statute of limitations (Rem. Rev. Stat., § 157) as a "liability express or implied arising out of a written agreement"— the directors' oath constituting the written agreement out of which the liability imposed by the constitution arises. See *Hughes v. Reed, supra.* But it is unnecessary to go to that length, for, in any event, the action was timely brought under the three-year statute of limitations. Rem. Rev. Stat., § 159.

Furthermore, the assumption that the holding in the *Bennett* case was predicated on a subscription agreement, coupled with the decision in the instant case, presents a situation with respect to the constitutional liability of stockholders that is utterly untenable. For, as to the liability of stockholders who signed a subscription agreement, the six-year statute of limitations would apply under the rule of the *Bennett* case, while as to the liability of stockholders who did not sign a subscription agreement, the two-year statute of limitations would apply under the rule laid down in the instant case.

I am of the view that, notwithstanding appellant's cause is predicated on § 12, Art. XII, of the constitution, the action sounds in contract, and, as remarked in *Union Market Nat. Bank v. Gardiner, supra,* "the statute of limitations as to contracts applies to liabilities of this nature."

I dissent.

MAIN and MILLARD, JJ., concur with BLAKE, J.

